(Decided 20th February, 1891.)

---

ELBERT THOMSON *vs.* WILLIAM J. GORTNER. SAME *vs.* SAME.

*What is not a Subject of Review on Appeal— Trover— Fraudulent conversion of Promissory notes—Contract— Evidence.*

Where a case is tried before the Court without the intervention of a jury, the finding of facts by the Court is not a subject of review on appeal.

Trover will lie for the conversion of a promissory note or other negotiable instrument, as well as for any other article of personal property.

The cancellation or destruction of a note to the possession of which a party is entitled, will amount to a conversion of it, and so will other dealings with the note by the party in actual possession to the prejudice of the party entitled to its possession.

G. made and delivered to M. & Co. his promissory notes payable to their order, in payment of an amount alleged to be due under an unsettled transaction between them. In fact G. owed M. & Co. nothing at the time the notes were given. They were not given for the accommodation of M. & Co., but because the latter wrongfully insisted that G. was still in debt to them. M. & Co. had the notes discounted at two different banks, and instead of paying them at maturity, as they were bound and able to do, caused the banks as innocent third parties to bring suits upon them against G., to which G. had no defence. In an action of trover for the notes brought by G. against M. & Co. it was HELD:

1st. That in honesty and fair dealing it was the duty of M. & Co. to keep the notes under their control, so that they could deliver them up to G. at any time he demanded them.

2nd. That the facts presented a case of the fraudulent use of notes wrongfully obtained, which amounted to a conversion of them as against G., for which he could maintain the action of trover.

A contract in writing dated the 26th of October, 1888, and signed by both parties, was entered into by G. and M. & Co. By this contract G. said: "I have this day sold to E. B. M. & Co. of Baltimore, Md., sixteen thousand (16,000) cases of my packing of sugar corn, (and any additional quantity that may be necessary to cover what I may be owing to them at 60 days from November 4th, 1888.) This corn is sold at fifty-seven and a half cents (57½c.) per doz. f. o. b., Hall's, Md. and Selin's Grove, Pa., a part from each factory; part labeled; and balance I am to allow cost of my baskets and the labeling, mailing, &c. 2c. case." In an action of *assumpsit* brought by G. against M. & Co. to recover the value of the corn shipped by G. to M. & Co. under this contract, over and above what was necessary to pay and did in fact pay what was due to them, on their bills for cans, M. & Co. offered evidence tending to show that a verbal agreement was entered into between them prior to this written contract, to the

effect that the corn was to be in quality according to a sample then in their possession.　On objection it was HELD:

That this evidence tended to add to and vary the terms of the written contract, and was inadmissible.

In order to constitute a valid verbal or written agreement, the parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean; and if an agreement be so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void.

APPEALS from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, MCSHERRY, and BRISCOE, J.

*Edgar H. Gans*, for the appellant.

*Frank Gosnell*, for the appellee.

MILLER, J., delivered the opinion of the Court.

In this record there are two appeals—one in an action of *trover* for the value of two promissory notes, which the declaration alleges the defendants converted to their own use; and the other in an action of *assumpsit* for canned corn, bargained and sold by the plaintiff to the defendants.　Both suits were between the same parties— Gortner as plaintiff and E. B. Mallory & Co. defendants —and were both tried together, as against Thomson, one of the partners of that firm.　The trials were had before the Court without the intervention of a jury.　In such cases the *finding of facts* by the Court is not a subject of review here.　Those findings are conclusive upon us, and all that this Court can do is to determine whether

the law has been correctly applied by the Court below to the facts thus found.

We shall dispose of the trover case first. The two notes alleged to be converted are one for $825.16, dated July 8, 1889, signed by Gortner, and payable to the order of Mallory & Co. ninety days after date; and the other is one of the same description for $654.09. These notes were given in the course of a business transaction between the parties. Gortner was a packer of canned corn at Selin's Grove, Pa., and on the 13th of April, 1888, by written contract bought a large number of cans from Mallory & Co., which were to be delivered as fast as ready, and notes given for each shipment, renewable July 1, 1888. Mallory & Co. furnished the cans under this contract, and notes were duly given by Gortner, some of which were paid. But Gortner, finding himself unable to pay his notes in cash, agreed to sell to Mallory & Co. 16,000 cases of his corn, and any additional quantity that might be necessary to cover what he owed them. This contract was in writing, and was made on the 26th of October of the same year. Shortly afterwards Gortner commenced to ship and deliver corn under this contract, and continued to do so from time to time, the last delivery of 1230 cases being made in May, 1889. In the meantime a controversy arose between the parties, Gortner contending that he had delivered corn more than enough to pay for the cans, and Mallory & Co. complaining that the quality of the corn did not come up to samples furnished. Pending this dispute, the two notes in question were given by Gortner at the request of Mallory & Co. in renewal of a note of his due July 12, 1889. This is a general outline of the case without reference to the particular evidence given at the trial.

The learned Judge below, as we understand his ruling on this point, found from the evidence before him,

*as matter of fact*, that Gortner hád paid and overpaid Mallory & Co. for the cans, and that these notes represented *no value* between the parties; that Mallory & Co. had had them discounted at bank, and had not protected them at maturity; that they are *causing* Gortner to be sued upon them in the name of innocent third parties, against whom he has no defense ; that they discounted the notes *with the intent* of using the names of innocent holders without notice, *for the purpose* of realizing thereon *for their own benefit*, and to *the prejudice* of Gortner. *These facts*, he decided, constituted a *conversion* of the notes for which trover will lie. Was he right in this legal conclusion ? That is the only question before us.

It is well settled law that trover will lie for the conversion of a promissory note or other negotiable instrument, as well as for any other article of personal property. *Winner vs. Penniman,* 35 *Md.,* 163; *Brown, et al. vs. Bokee, Adm'r,* 53 *Md.,* 170. It may be difficult in some cases to determine what acts will amount to a conversion, where there has been no demand and refusal to deliver. The cancellation or destruction of a note, to the possession of which a party is entitled will undoubtedly amount to a conversion of it, and so will other dealings with the note, by the party in actual possession to the prejudice of the party entitled to its possession. Here, upon the facts found, the notes *at the time* they were given represented *no value* as between the maker and payees. Gortner had then *paid* and *overpaid* all that was due by him to Mallory & Co., and was under no obligation to give them these notes. In honesty and fair dealing it was the duty of Mallory & Co. to keep the notes under their own control, so that they could deliver them up to Gortner at any time he demanded them. If they had them discounted, they were justly and morally bound to protect them at maturity. Gortner was

not a mere *accommodation* endorser or maker in the commercial sense of that term, nor were the notes given for any purpose of accommodating Mallory & Co. They were given because Mallory & Co. wrongfully insisted that Gortner was then still in debt to them for their bill for cans. Now, what did they do with these notes? They had them discounted at two different banks, and, instead of paying them at maturity, as they were in law and morals bound and able to do, they *caused* the banks, as innocent third parties, to bring suits upon them against Gortner. To these suits Gortner has no defence, and must pay the judgments recovered thereon. The facts found also show that Mallory & Co. had these notes discounted *with the intent* of using them and inducing the banks, who were innocent holders without notice, to bring suits thereon against Gortner, and that they did this for the purpose of benefiting themselves, and injuring Gortner. A stronger case of the fraudulent use of notes wrongfully obtained can hardly be presented, and we thoroughly agree with the Court below that it amounts to a conversion of them, as against Gortner, and that he can maintain this action of trover. If authority for this conclusion be needed, we refer to the case of *Decker vs. Matthews*, decided by the Court of Appeals of New York, 2 *Kernan*, 313, where it was held that the maker of a negotiable promissory note could maintain trover for its conversion against one who, before it had any legal inception, wrongfully negotiated it to a *bona fide* holder for value; that he could recover the amount of the note as damages for its conversion, without averring or proving that he had paid it to the holder; and that it was sufficient that he was legally liable to pay it. We have no hesitation in affirming the judgment in the trover case, and accordingly affirm it.

The *assumpsit* case is for the value of the corn shipped by Gortner to Mallory & Co. over and above what was

necessary to pay, and did in fact pay, what was due to them on their bill for cans. The contract under which the corn was shipped, was in writing, signed by both parties, and, as has been stated, was dated the 26th of October, 1888. By this contract Gortner says: "I have this day sold to E. B. Mallory & Co. of Baltimore, Md., sixteen thousand (16,000) cases of *my packing of sugar corn*, (and any additional quantity that may be necessary to cover what I may be owing to them at 60 days from November 4th, 1888.) This corn is sold at fifty-seven and a half cents (57½ c.) per doz., f. o. b., Hall's, Md., and Selin's Grove, Pa., a part from each factory; part labeled; and balance I am to allow cost of my labels and the labeling, mailing, etc., 2 c. case." This was the contract under which Gortner supplied the corn. At the trial, Mallory & Co. offered evidence tending to show that a *verbal* agreement was entered into between them, *prior* to this written contract, to the effect that the corn was to be in quality, according to *a sample* then in their possession. This evidence was taken subject to exception, and after the testimony was closed, the plaintiff asked the Court to reject it because it tended to contradict or vary the terms of the written contract subsequently made. The Court declared the evidence to be inadmissible, and we approve this ruling. We prefer, however, to rest our approval upon the ground that such evidence tended to add to and vary the terms of the written contract, rather than upon the reasons assigned by the Judge. In regard to the *quality* of the corn, the contract simply required that it be of Gortner's "*packing of sugar corn*," and then the price is fixed. If the corn delivered was of *his packing*, and was *sugar corn*, then, in the absence of fraud, the contract was gratified, and the attempt to give it any higher or different standard by parol evidence, is an attempt to add to the terms of the written instrument.

In the course of the controversy, and before the suits were brought, the parties made an attempt at a compromise. This alleged compromise is embodied in a letter written by Mr. Earp, a clerk of Mallory & Co., to Gortner, dated July 11th, 1889, as follows:

"*Dear Sir:*—When your two notes at 90 days, dated July 8th, 1889, one for $825.16, the other for $654.09, were handed me the other day, you and Mr. Thomson stated to me what was your understanding of the matter which I understood to be as follows: You gave the two notes to balance your account with E. B. Mallory & Co., but if the corn market should advance sufficiently to justify, you expected E. B. Mallory & Co. to pay one of the notes; but if the market should not advance sufficient to justify them in paying one of the notes, then you would consider that you owed the whole amount, and was able and willing to pay both notes. Mr. Thomson agreed to this, and said if the market should advance enough to justify E. B. Mallory in paying one of the notes they would pay one, but no more. This is what I gathered from what you said, and I have written it to you so as to be sure that my understanding of it is the same as yours and his, so that, if anything should happen to either, this would be a record."

The learned Judge below disposed of this letter as follows: "The terms of the compromise, as found in Earp's letter, are attempted to be explained by defendants' counsel in his brief by simply measuring the advance by the notes, and thus finding within the contract itself the elements necessary for its interpretation. This solution is ingenious, but unsatisfactory. In the first place, it is manifestly an afterthought. No such explanation was offered at the trial, when attention was pointedly called to a certainty. Again, from what point is the advance to be taken? From the *contract price* or the *market price* at the time? Other objections to this view, are stated.

in plaintiff's brief. *The alleged compromise is void for uncertainty.*"

We have carefully considered this branch of the case, and have reached the conclusion that the learned Judge committed no error in declaring this compromise contract void for uncertainty. The law is too well settled to admit of doubt, that in order to constitute a valid verbal or written agreement, the parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. And if an agreement be so vague and indefinite that it is not possible to collect from it the full intention of. the parties, it is void; for neither the Court nor the jury can make an agreement for the parties. Such a contract can neither be enforced in equity nor sued upon at law. It is hardly necessary to cite any of the numerous authorities that sustain this plain legal proposition. Our own decisions in *Delashmutt, Ex'r vs. Thomas*, 45 *Md.*, 140; *Gelston and Meyenberg vs. Sigmund*, 27 *Md.*, 334; *Myers vs. Forbes*, 24 *Md.*, 598, and *Howard, et al. vs. Carpenter*, 11 *Md.*, 259, are quite sufficient. Now, reading the contract before us, we find it impossible to arrive at the intention of the parties on several important questions. As the Judge below has asked, from what point is the advance in the corn market to be reckoned? From the contract price of 57½ cents per doz., or from the market price ruling at the date of the contract, or at the maturity of the notes? Who was to determine what advance in market prices would *justify* Mallory & Co. in paying one of the notes, and which one? On all these questions the contract is absolutely silent. Again, was it intended that the advance should be just $654.09, or just $825.16, or that much *plus* the cost of storage, interest, and insurance? Or did Mallory & Co. contemplate they would first want a profit on the transaction? and, if so, how much? Were they to pay the larger note or the smaller

Thomson *vs.* Gortner.

one? Suppose, at the maturing of the notes, they could have sold the corn at a large profit, what is there in the contract to prevent them from saying: "We expect the price to go still higher, and we will pay only the smaller note," though the plaintiff insisted they should pay the larger one? Again, suppose there had been a material advance after the contract was made, say in July, August and September, and they had held on waiting for a still further advance, and in October, when the notes matured, the price had dropped, say to 40 cents per doz., what would then have been their obligations under this contract? Still again, suppose they had sold all the corn in July and August at 50 cents—the then ruling price,—and in September and October it had risen to $1.00 per doz., would they be relieved from their undertaking to pay one of the notes? The alternative clause in the contract furnishes no solution of these difficulties, but rather enhances them. In short, and without pursuing the subject further, we may say we have never met, either in the text books or authorities, with a contract more vague and uncertain in its terms, and where the intention of the parties is more involved in obscurity. We cannot make out what that intention is, and therefore affirm the ruling which declares the contract void for uncertainty.

The Judge below, from the facts found and reasons stated by him, rendered a verdict, and gave judgment in the *assumpsit* case, in favor of the plaintiff, for the value of the corn delivered, over and above what was necessary to pay the bill for cans, *at the contract price*, and that judgment we also affirm.

*Judgments affirmed.*

(Decided 20th February, 1891.)