[No. 30611. Department One. November 19, 1948.]

V. F. PAVEY et al., *Respondents,* v. GEORGE S. COLLINS *et al., Appellants.*[1]

[1]Reported in 199 P. (2d) 571.

*Wright & Wright,* for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Altha P. Curry,* for respondents.

STEINERT, J.—This was an action to recover a real-estate broker's commission, alleged to be due and owing to the plaintiffs for procuring a purchaser of a parcel of real estate owned by the defendants. The cause was tried to the court, without a jury, and resulted in findings, conclusions, and judgment for plaintiffs in the amount prayed for by them. Defendants appealed.

Appellants, George S. Collins and Helen C. Collins, are husband and wife and, at times hereinafter mentioned, were the owners of two farms situated near Enumclaw, Washington, together with the livestock, farm machinery, and equipment thereon. Respondents, V. F. Pavey and Sarah H. Pavey, are husband and wife and reside in Seattle, where Mr. Pavey is engaged in business as a licensed real-estate broker.

On or about July 1, 1946, appellants executed two exclusive brokerage agreements authorizing respondent V. F. Pavey to sell the two farms owned by the appellants. In

this action, we are concerned with only one of these agreements, the material portion of which reads as follows:

"For the consideration of the sum of one ($1.00) dollar receipt of which is hereby acknowledged, the undersigned hereby gives to V. F. Pavey, Seattle, Washington, an exclusive option to sell the following described real property: W½ NE¼ SW¼ of Section 30, Tp. 20 N., Range 7, E.W.M., Except W. 153 ft. of N. 284.9 feet, and except county road [the total area amounting to approximately 19 acres] together with the following described personal property: farm machinery as per attached list at any time on or before Dec. 31st, 1946, for the sum of $16,500.00 with a cash payment of $5000.00, or more, balance to be paid as follows: $75.00 to $100.00 per mo. including 5% per annum interest on unpaid balance and I further agree to pay said V. F. Pavey a commission of 10% on the full amount of the sale price of $16,500.00, or of any other price finally agreed to.

"Dated at Enumclaw, Wn., this 1st day of July, 1946.

"Signed George S. Collins<br>
"Signed Helen Clayton Collins"

This option agreement expired by its terms on December 31, 1946. At the time of the expiration of the agreement, the property therein described had not been sold, nor had Pavey secured a prospective purchaser thereof.

Thereafter, on January 12, 1947, appellant George S. Collins addressed and mailed a letter to Mr. Pavey, reading as follows:

"Dear Mr. Pavey—

"Please be advised that your exclusive on my two ranches at Enumclaw no longer exists, nevertheless should you have a buyer for either one $13,500 for 19 Acres and $11000 on the 40 with commission deducted from these amounts, *I will let you know if these are sold by anyone else.*

"Your exclusive on these two ranches expired January 1st 1947 please sign below and return to me as evidence that I have notified you of same.

"X ................................................................

"Geo. S. Collins" (Italics ours.)

On or about January 22, 1947, which was three weeks after the expiration of the option agreement, one Leonard Roberts called at the office of V. F. Pavey in response to an advertisement which Pavey was then publishing with refer-

ence to certain real property other than the parcel involved in the present action. Pavey took Roberts out to view the advertised property, but it proved to be too large a place for Roberts. Pavey then, on the same day, showed Roberts three other farms in the vicinity of Enumclaw, the last one of which was the nineteen-acre farm of the appellants, described in the brokerage agreement quoted above.

Upon their return to Pavey's office that evening, Pavey telephoned to appellant George S. Collins and inquired of him whether the farm was still available for sale. Collins replied that it was. Pavey then discussed the matter further with Roberts and advised him that the sale price of the property was $13,500. There is a serious dispute in the evidence as to whether Pavey, at that time, informed Collins that Roberts was a prospective purchaser of the farm. Pavey testified that he did so inform Collins, and that Collins then told him to go ahead and sell the property; whereas Collins testified that Pavey simply inquired whether the property had been sold, stating that he had a client but not mentioning the name of Roberts or anyone else.

On that same evening, in the office of Pavey, it was agreed between Pavey and Roberts that, on the next day, Roberts, with certain members of his family, would again visit and inspect the farm which had just been shown to him and in which he was interested. Roberts went as agreed and again viewed the property. During that trip, Roberts made inquiry of a neighboring farmer, and also at a bank in Enumclaw, concerning the ownership of the farm and its value, and was told that $12,000 would be "plenty for the place." Roberts, who was called as a witness by respondents Pavey, testified that, after obtaining the information with respect to the ownership and value of the property, he called on Pavey and told him that he could not raise $13,500 and was "through dealing on the place."

Within a few days thereafter, Roberts, having learned from previous inquiries made by him that appellants were the owners of the property, called directly on appellant George S. Collins and, after some discussion, offered him $12,000 for the farm. Roberts testified that he did not tell

Collins anything about his former dealing with Pavey or that he had first learned of, and been shown, the place through Pavey. Collins accepted Roberts' offer, and an earnest money agreement was executed between the sellers and the purchasers on January 28, 1947. Pursuant thereto, appellants, on February 12, 1947, executed a warranty deed conveying the real estate to Roberts and his wife. Collins testified that at no time prior to the execution of the earnest-money agreement with Roberts did he know that Roberts had dealt with Pavey or that Pavey had anything to do with the prospective sale.

Upon learning of the consummated sale by appellants to Roberts, Pavey made demand of Collins for broker's commission and, upon Collins' refusal to comply, instituted this action.

After hearing the evidence adduced by the parties, the trial court made findings, the substance of which may be stated as follows: (1) that on July 1, 1946, appellants granted respondent V. F. Pavey an exclusive option to sell the property in accordance with the terms thereof; (2) that the exclusive option expired by its terms on December 31, 1946; (3) that by a letter of January 12, 1947, appellants granted Pavey "an extension of said brokerage agreement and right to sell but without the exclusive feature thereof"; (4) that thereafter, in accordance with the brokerage listing and extension thereof, respondent V. F. Pavey expended considerable time, effort, and money in advertising the property and in personally conducting prospective purchasers to view the premises; (5) that, as a result of such expenditures, respondent V. F. Pavey procured Leonard Roberts as a prospective purchaser of the property; (6) that, while Pavey was still negotiating with Roberts for the purchase of the property, Roberts went directly to appellant George S. Collins and concluded a transaction for the sale of the property by the appellants and purchase thereof by Roberts; and (7) that respondent V. F. Pavey was the procuring cause of the sale and purchase.

The trial court made no finding relative to what was said by Pavey and Collins in their telephone conversation men-

tioned above, or as to whether Collins at that time, or at any other time, orally authorized Pavey to sell the property on a commission basis.

The question here presented for decision is whether the requirements of the statute of frauds relating to agreements authorizing agents or brokers to sell or purchase real estate for compensation have been met in this case.

The statute here involved is Rem. Rev. Stat., § 5825 [P.P.C. § 577-3], which provides:

"In the following cases specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . . (5) an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

 It is apparent that whatever may be said or held with respect to the statutory sufficiency of the original exclusive option agreement, executed July 1, 1946, that agreement does not and cannot, in and of itself, apply to the sale in this case or warrant recovery thereon by the respondents, for the simple reason that this agreement expired by its own express terms on December 31, 1946, and all negotiations for the sale involved in the present action took place after January 21, 1947.

 It is equally apparent that the letter of January 12, 1947, quoted above, does not, in and of itself, meet the requirements of the statute. It does not authorize or employ the broker to do anything whatever with respect to the real estate owned by appellants. It says nothing about any compensation or commission to be paid to the broker upon a sale of the property. It does not contain an adequate description of the land to which it is supposed to refer or apply.

Respondents do not base their claim for recovery upon either of these documents considered by itself. The theory of their complaint is, rather, that, after the exclusive agency had expired, appellant "orally and in writing authorized

the continued efforts of the plaintiff [respondent V. F. Pavey] to sell said property, but without the exclusive feature."

In this connection, we may at once eliminate any suggestion of oral authorization, for two reasons: (1) The trial court did not find that there was any such authorization; and (2) in any event, the statute requires that an agreement employing or authorizing an agent or broker to sell real estate on commission, or some memorandum of such agreement, be in writing and signed by the party to be charged therewith.

The theory upon which the trial court decided this case in favor of the respondents was, as clearly appears from the court's findings, that, by their letter of January 12, 1947, appellants granted the respondent broker an *extension* of the original brokerage agreement and right to sell, but without the exclusive feature thereof.

For several reasons, we disagree with the trial court's theory of extension.

In the first place, the letter of January 12, 1947, on its face negatives any "extension" of a prior agreement, and categorically declares that the prior agreement has expired and no longer exists.

The second reason is that a contract which by its terms has expired is legally defunct, and, since the vitality which it once had has ceased, there is nothing upon which an extension may legally operate. So long as a contract remains executory, the parties thereto, acting upon sufficient consideration, may by agreement rescind, alter, modify, supplement, or replace it; but, when the contract has terminated or been extinguished, it is no longer subject to extension, for extension implies an *existing* agreement. To bring the terms of an extinguished contract into renewed existence requires a new contract embodying such terms.

Thirdly, the letter of January 12, 1947, fixed no definite or certain time for the period of extension of the original agreement. An extension, to be binding, must be for a time that is definite and certain or capable of being made so by

some future event which is sure to occur. *Stickler v. Giles*, 9 Wash. 147, 37 Pac. 293; 12 Am. Jur. 1005, Contracts, § 427.

■ Finally, if the letter itself conferred any authority whatever upon respondents, we do not believe that such authority can now be asserted by them, inasmuch as they did not comply with the terms exacted by that instrument. The letter required that it be signed and returned by respondents, and this was never done. On the contrary, they retained the letter until the time of trial, at which time they offered it, not signed by either of them, as evidence of the authority which they now claim to have had. Having failed to comply with the provision of the letter which stated the reason for which it was written and sent, respondents cannot invoke another provision therein thought to operate in their favor.

In their brief on appeal, respondents advance the additional theory that the letter of January 12, 1947, constituted *a new agreement*, incorporating by reference the provisions of the old agreement. Relying upon that theory, they cite cases and textual authority to the effect that the memorandum required by the statute above quoted does not have to be in one document only, but may be pieced together out of separate writings, connected with or referring to one another either expressly or by inference flowing from the subject matter and occasion. Respondents then argue that the original option agreement and the subsequent letter clearly indicate upon their faces that they relate to the same subject matter, that they are therefore to be read together, and that when so read they evidence a clear intent to continue the relationship of principal and broker on the terms set forth in the original agreement, except for the exclusive feature.

■ For the purposes of the present argument, we may concede that the memorandum required by the statute may consist of several writings if a connection between them appears either by express reference or by inference from their relationship in subject matter, or from the very nature of their contents. We will further assume, for the purposes of

this case, that the two instruments here involved may be read and considered together.

However, if the two instruments are to be read together, the conclusion which the respondents seek to draw does not, in our opinion, follow. What the two written instruments do show when taken together is simply this: (1) that between July 1 and December 31, 1946, respondent V. F. Pavey did have an agreement with the appellants which was sufficient to satisfy the statute; (2) that the agreement terminated and ceased to exist, by its own terms, on December 31, 1946; (3) that appellants thereafter, by letter of January 12, 1947, expressly confirmed the fact that the agreement had by its terms expired and ceased to exist; and (4) that, in that same letter, all that the appellants ever agreed to do was to advise respondents whether the property had been sold, at such time or times when respondents should have a buyer.

The letter did not authorize the respondents, as agents, to sell the property; did not obligate appellants as owners to sell it on any terms whatever; did not require appellants to accept any offer from respondents at any price; did not fix or agree to pay any broker's commission; and did not set any time within which respondents were to be allowed to produce a buyer. The situation may be summed up in this manner: Whatever authority to sell and whatever right to a commission the respondents may have had under the original agreement came to an absolute end on December 31, 1946, and were not resuscitated by the letter of January 12, 1947; and even though respondents may have endeavored to secure a prospective purchaser after the expiration of the original agreement, relying upon the subsequent letter, nevertheless they had no contract under which they were employed or authorized to sell the appellants' property on commission, regardless of whether or not Rem. Rev. Stat., § 5825, *supra*, be considered.

The judgment is reversed, with direction to the trial court to dismiss the action.

MALLERY, C. J., BEALS, JEFFERS, and HILL, JJ., concur.