STRICKLER ENGINEERING CORPORATION ET AL. *v.* SEMINAR, INCORPORATED

[No. 163, October Term, 1955.]

94

*Decided May 8, 1956.*

The cause was argued before Brune, C. J., and Delaplaine, Collins, Henderson and Hammond, JJ.

*Robert S. Bourbon,* with whom was *Robert C. Heeney* on the brief, for appellants.

*Warren Browning,* with whom were *Leonard S. Melrod* and *Joseph V. Gartlan, Jr.,* on the brief, for appellee.

Collins, J., delivered the opinion of the Court.

This is an appeal from a judgment entered in favor of Seminar, Incorporated, a Delaware Corporation, (Seminar), appellee, and against Strickler Engineering Corporation, a body corporate, and Dean G. Strickler and Ruth M. Strickler, all herein referred to as Stricklers, appellants, on a motion for Summary Judgment.

On December 15, 1953, Stricklers, as the first party, and Seminar, as the second party, entered into an agreement which provided, for the purposes of this case, that Stricklers were in the business of buying diesel engines and other heavy machinery and equipment. They had the opportunity to buy two diesel engines and were in need of capital for that purpose. They desired to enter into a joint venture for the reconditioning and sale of said equipment. Seminar was desirous of entering into said joint venture with Stricklers upon certain terms and conditions. Stricklers agreed to purchase two diesel engines and two alternators for the total sum of $8,800.00 in cash. Seminar agreed to advance to Stricklers said sum of $8,800.00. Stricklers were to dismantle and

bring to their plant in Baltimore all this equipment for the reconditioning for sale. The parties agreed to own said engines as a joint venture and to resell said engines and split the profits, Stricklers to receive sixty percent and Seminar forty percent. It was agreed that Stricklers had an order for one of the diesel engines from a third party for a sale price of $13,500.00, less a commission of $1,350.00. With reference to the remaining diesel engine, Stricklers agreed to recondition it and offer it for sale, and upon the consummation of such sale, to render unto Seminar an itemized statement and a check made payable to Seminar and Stricklers jointly evidencing the share of profits to which the parties were entitled. It was also agreed that Stricklers should recondition "and offer the said remaining diesel engine for sale and agree that in the event that such engine not be sold by December 15, 1954, that they will at such time, at the option of Second Party, remit unto the said Second Party the sum of $4,400.00, which represents the purchase price of said diesel engine. In the event that Second Party shall desire to continue to allow First Parties to offer said engine for sale and such period extends beyond December 15, 1954, then and in such event First Parties shall hold for the benefit of both parties to this agreement the aforementioned diesel engine and shall continue to offer said engine for sale for the joint profit of the parties to this agreement; provided, however, that at any time after December 15, 1954, upon a thirty day notice to First Parties, Second Party shall become entitled to demand the return of the original cost of said engine; namely, the sum of $4,400.00 and upon such demand having been received by said First Parties, First Parties do hereby agree at the expiration of thirty days from the date notice is received by them by registered mail, that they will remit to Second Party the sum of $4,400.00 and upon said payment Second Party shall have no further interest in the diesel engine hereinbefore described. First Parties shall execute within the next few days a note for $4,400.00 to secure repayment of $4,400.00 in the event that the second diesel engine is not sold within one year. Said note shall then become due and payable at the expiration of said one year period.

This note shall be executed by Dean G. Strickler and Ruth M. Strickler in their individual as well as corporate capacities." Title to the second diesel engine would remain in Seminar until sold.

The following note was signed:

"$4,400.00          Baltimore, Md.          December 18, 1953

One (1) year ................... after date ..........
we .............................. promise to pay to

SEMINAR, INC.

......................... Forty-four hundred Dollars
Value received

No.                    Due

STRICKLER ENGINEERING CORPORATION
By /s/ DEAN G. STRICKLER
Dean G. Strickler, Pres.

(Endorsement on back of note)'

/s/ D. G. STRICKLER
/s/ RUTH M. STRICKLER"

On July 13, 1955, Seminar filed a suit against Stricklers for $4,400.00, with interest from December 18, 1954, and costs. The declaration contained the common counts and a special count setting forth the provisions of said note. Filed with the declaration was the motion for Summary Judgment.

The defendants, appellants, answered by filing the general issue plea, an affidavit in opposition to the motion for Summary Judgment, and the joint venture agreement. In that affidavit they alleged that the note for $4,400.00 was merely a receipt for money advanced by the plaintiff to the defendants under and by virtue of the joint venture agreement. Defendants further alleged "said agreement concerns a joint enterprise to sell certain diesel equipment to third parties with plaintiff and defendant sharing profits of said sale; that said venture is still in being, it never having been terminated in accordance with its terms; that a copy of said venture is attached hereto as an exhibit; that said agreement was pre-

pared by an attorney hired by your affiants and they relied on his representations as to the nature of said agreement; that said attorney was in fact attorney for the plaintiff and a member of said group of investors incorporated in the plaintiff's name; that a number of the terms of said agreement were not explained to defendants and it was never contemplated that the plaintiff herein could sue on the note prior to a sale of the equipment to be purchased with money advanced by the plaintiff and for which the note was given as a receipt therefor; that on the contrary, subsequent to the execution of the 'Joint Venture Agreement' it was contemplated and expressed by the agents, servants and employees of the plaintiff that if the sale of the diesel equipment did not take place within one year from date, that in that event the defendants would pay five (5%) per centum per annum interest on said money advanced; that one of the pieces of equipment has been sold and there was a dispersal of profits in accordance with the terms of said agreement; that the remaining piece of equipment has not been sold, but is saleable and should be sold before a trial of this case on its merits and said suit herein therefore will be made moot and unnecessary. That there are questions of law and fact to be decided on a trial on its merits and defendants respectfully ask this Honorable Court to dismiss said motion for summary judgment and permit a trial of the within cause."

The plaintiff then filed a further affidavit in support of its motion for Summary Judgment accompanied by a letter from plaintiff to defendants dated January 6, 1955, which gave defendants thirty days notice for the return of the $4,400.00 as required by the terms of the joint venture agreement. At the hearing on the motion for Summary Judgment the aforesaid note was offered in evidence. The authenticity, competency, or materiality of none of the aforementioned documents was disputed.

The trial judge granted the Summary Judgment claimed by the plaintiff, appellee, and from that judgment defendants, appellants, appeal here.

The Summary Judgment Rules of the Court of Appeals

were adopted on November 12, 1947, and became effective on January 1, 1948. Summary Judgment Rule 4(a) requires that: "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." If the affidavit filed or other evidence shows a genuine conflict, the court should deny the motion. The court does not attempt to decide any issue of fact or of credibility, but only whether such issues exist. This procedure is not a substitute for a trial but merely a hearing to decide whether a trial is necessary. The party opposing the motion must show by facts, which would be admissible in evidence, that there is real dispute between the parties. The rule is one whereby the court may summarily determine whether or not there is a *bona fide* issue between the parties. A determination by the court that such an issue is. presented requires the denial of the motion for Summary Judgment and a trial of the issues by the jury or court at the election of either party. *Frush v. Brooks,* 204 Md. 315, 104 A. 2d 624; *Nardo v. Favazza,* 206 Md. 122, 110 A. 2d 676. The question therefore before us is whether the judgment should have been granted as a matter of law.

The appellants contend first that the note is not what it purports to be, but is in effect a mere receipt. As above set forth, the joint venture agreement provided that a note for $4,400.00 should be executed by the party of the first part for repayment of that amount in the event the second diesel engine was not sold within one year and that said note should then become due and payable at the expiration of one year. This note is plain on its face and speaks for itself as a matter of law. Where parties have expressed their intention in clear and definite terms the paper must be construed according to the true meaning of the words used therein. Where written instruments are clear and definite it is exclusively the province of the court to interpret them. *Cook v. Carroll,* 6 Md. 104; *Planters Mutual Ins. Co. v. Deford,* 38 Md. 382. A note could hardly be in clearer and more definite language than the one before us here.

The appellants contend secondly that the venture is still in being. The joint venture agreement is clear in its terms that, in the event the engine was not sold by December 15, 1954, the appellants would remit the sum of $4,400.00. In the event that the appellee desired to continue to allow the appellants to offer said engine for sale beyond December 15, 1954, any time after that date upon thirty days notice to first parties the appellee was entitled to the return of the $4,400.00 upon payment of which it relinquished its interest in the engine. The appellants in their brief admit that they did receive the notice of termination. The language in the agreement on this question being clear, this point is no defense to the action here under the authorities in the above paragraph.

The appellants contend thirdly, as expressed in their affidavit in opposition to the motion that it was contemplated and expressed by the agents, servants and employees of the appellee, that, if the sale of the diesel engine was not made within one year from the date of the joint venture agreement, in that event the appellants would pay five per centum per annum interest on said money advanced, and that, therefore, the note is not due. Assuming, without deciding, that evidence of this subsequent alleged parol agreement was admissible to change the terms of the joint venture agreement of December 15, 1953, such agreement would not have the effect of making the change contended for by the appellants. If such a parol agreement was made, the question arises as to how long the five per centum interest was to be paid and when the money was due. This alleged verbal contract is silent on this essential requirement. Suppose, for instance, that the appellants were never able to sell this second engine. It has been frequently stated by this Court that in order to constitute a valid verbal or written agreement the parties must therein express themselves in such terms that it can be ascertained to a reasonable degree of certainty what the agreement meant. If the agreement is so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void. *Thomson v. Gortner,* 73 Md. 474, 482, 21 A. 371; *Blenard v. Blenard,* 185 Md. 548, 557, 45 A.

2d 335; *Moran v. Hammersla,* 188 Md. 378, 382, 52 A. 2d 727; *Robinson v. Gardiner,* 196 Md. 213, 217, 76 A. 2d 354; *Globe Home Impvt. Co. v. Brothers,* 204 Md. 73, 76, 102 A. 2d 748. Agreements for an extension of time of contracts must be for a definite time or capable of being made so by some future event which is sure to occur. *Pavey v. Collins,* 31 Wash. 2d 864, 199 P. 2d 571; *Dobbins v. City Bond & Mortgage Co.,* 343 Mo. 1001, 124 S. W. 2d 1111. See also cases collected in 85 A. L. R. 319-328, holding that an agreement for an extension of time for payment of a negotiable instrument must be for a definite time.

The appellants finally contend that there was a conflict of interest by the attorney representing all the parties to the joint venture agreement. They rely strongly on the case of *Baker v. Otto,* 180 Md. 53, 22 A. 2d 924. There, an attorney sought to compel the executors of the estate of a deceased client to release a real estate mortgage executed by the attorney, who contended that he had paid the entire mortgage indebtedness before the death of the deceased. This Court in that case pointed out that the rule is firmly established that any transaction between an attorney and client is *prima facie,* fraudulent and invalid, and the burden is upon the attorney to show that he used no undue influence or deception but that the transaction was fully understood and fair in all respects. This rule is founded on public policy because of the confidential and fiduciary relationship which enables an attorney to exercise a very strong influence over his client and to obtain undue advantage. The courts exercise the most exact scrutiny to be certain that the attorney has taken no unfair advantage of his client. See also *Hughes v. McDaniel,* 202 Md. 626, 633, 634, 98 A. 2d 1. The allegations in opposition to plaintiff's motion for Summary Judgment on this point is that the joint venture agreement was prepared by an attorney hired by the appellants and they relied on his representations as to the nature of the agreement. The attorney was in fact attorney for the plaintiff and a member of the group of investors incorporated in Seminar's name. The attorney did not explain some of the terms of the agreement to the appellants and it was never contemplated by them that the plaintiff could sue

on the note prior to a sale of the equipment. As stated in *Roman v. Mali*, 42 Md. 513, even where the relationship of client and attorney exists, the rule does not absolutely avoid transactions between parties standing in that relationship. The attorney is under no actual incapacity to deal with his client. It was said in that case at page 559: "All that can be required is, that there has been no abuse of the confidence reposed; no imposition or undue influence practiced, nor any unconscionable advantage taken by the attorney of the client. When a transaction between parties occupying such relation to each other is brought in question, the onus of the case is cast upon the attorney of showing that nothing has happened in the course of the dealing which might not have happened had no such connection subsisted, and that the transaction has been fair in all respects. If the court be satisfied that the party holding the relation of client performed the act or entered into the transaction voluntarily, deliberately and advisedly, knowing its nature and effect, and that no concealment or undue means were used to obtain his consent to what was done, the transaction will be maintained. Such is the rule as deduced from the best considered cases upon the subject, and which is said to be dictated from motives of public policy." As to the allegation that the agreement was prepared by an attorney who was hired by them, and who was in fact attorney for the plaintiff and a member of Seminar, it hardly appears that here, where there was no apparent conflict when the agreement was drawn, the parties had reached an agreement and the possibility of conflicting interests were remote, it was necessary for each side to have different attorneys. *Lessing v. Gibbons*, 6 Cal. App. 2d 598, 45 P. 2d 258; *Miller v. Miller*, 188 Md. 567, 53 A. 2d 573. There is no allegation that appellants did not know that the attorney was acting in this dual capacity and was a member of Seminar, or that they did not consent to his so acting. The allegation that said agreement was not explained to the appellants is not an allegation that the attorney misrepresented the agreement to them. It hardly seems necessary that the attorney should have told the appellants that the paper which they signed was a note and not a receipt. It is so plain on

its face that it is hardly believable that experienced business people would require such an explanation. There is no allegation that the attorney concealed from them any part of the agreement or that he stated that the agreement was different from what it actually was. There is no allegation that the attorney misled them by any act or word. Neither is it alleged that they did not receive copies of the agreement, which for clarity speaks for itself. There is not a single allegation of fraud or lack of good faith on the part of the attorney.

For the reasons herein given, we are of opinion that the trial judge as a matter of law was correct in granting the motion for Summary Judgment.

*Judgment affirmed, with costs.*