[No. 2266-1.    Division One.    August 5, 1974.]

CARPENTERS TRUSTS OF WESTERN WASHINGTON, *Respondent*,
v. ALGENE CONSTRUCTION COMPANY, INC., *et al.*, *Appellants*.

*Wolfstone, Panchot & Bloch* and *Terence M. McTigue*, for appellants.

*Edward G. Gough*, for respondent.

SWANSON, C.J.—Algene Construction Company, Inc. (Algene) and United Pacific Insurance Co. (United Pacific), its surety, appeal from a summary judgment entered against them in favor of Carpenters Trusts of Western Washington (Carpenters Trusts). Carpenters Trusts sued for trust fund contributions due, owing and unpaid for the period of June 21, 1971, to December 31, 1971, pursuant to a 1971 collective bargaining agreement between Associated General Contractors (AGC) and the United Brotherhood of Carpenters and Joiners of America (Union).

Carpenters Trusts moved for summary judgment primarily on the basis of the following undisputed facts: Algene

signed a compliance agreement with the Union on April 27, 1970, which incorporated by reference a 1968 collective bargaining agreement, together with any and all changes or amendments to such agreement and including prior trust agreements. The 1968 collective bargaining agreement established a trust fund from which certain health and retirement benefits were to be paid to union members. The trusts were to be funded by a contribution from employers in a certain amount for each hour worked by an employee-member of the Union. On October 14, 1970, Algene became a member of AGC and assigned all its collective bargaining rights to AGC. Thereafter, the 1971 collective bargaining agreement, termed an amendment to the 1968 agreement, was entered into between the Union and AGC. This 1971 agreement provided for increased employer contributions to the trust retroactive to June 21, 1971, which Algene refused to pay.

The trial court rejected Algene's argument that it was not bound by the 1971 collective bargaining agreement and that any obligation it might have for delinquent trust fund payments was discharged by a compromise on March 2, 1972. Summary judgment was entered against Algene and United Pacific in the total sum of $2,019.50 representing the delinquent trust fund contributions, plus liquidated damages, interest, costs of suit and a $175 attorney fee. This appeal followed.

Algene challenges the correctness of the summary judgment and contends as a matter of law that it is not bound by the 1971 collective bargaining agreement. Algene admits that it signed the April 27, 1970, compliance agreement, but argues that the 1968 collective bargaining agreement expired on June 1, 1971. Therefore it contends that the 1971 agreement, which forms the basis of this suit and which purports to be an amendment to the 1968 collective bargaining agreement, is inoperative and ineffective for any purpose. In support of this contention, Algene primarily relies upon *Pavey v. Collins,* 31 Wn.2d 864, 199 P.2d 571 (1948).

In *Pavey* the court considered an expired contract to pay a real estate broker's commission and held that an extension of such expired agreement was ineffective, stating at page 870:

[W]hen the contract has terminated or been extinguished, it is no longer subject to extension, for extension implies an *existing* agreement. To bring the terms of an extinguished contract into renewed existence requires a new contract embodying such terms.

The respondent Carpenters Trusts argues that the *Pavey* decision is distinguishable on its facts, and inapposite. We agree. In *Pavey,* the party seeking termination of the agreement wrote to the real estate broker specifically stating that the prior agreement had expired and no longer existed. From these facts, the *Pavey* court concluded that, when read together, the documents themselves showed that the first agreement had expired.

In the case at bar, however, when the 1970 compliance agreement is read together with the 1968 and 1971 collective bargaining agreements and the accompanying trust agreements, it is apparent that there is a continuing and coordinated agreement between the parties. Thus, the 1971 agreement contains a recital that it is an amendment to the 1968 agreement. When such recital is examined in light of the subsequent conduct of the parties, it is apparent that Algene proceeded in a manner consistent with a belief that the successive collective bargaining agreements constituted a coordinated and continuing agreement. Algene at all times paid to the trusts the amount required by way of employer contributions up to June 21, 1971. Its refusal to make the increased benefit payments after June 21, 1971, was not based upon any contention, such as it now makes, that the agreement was not valid or binding upon it, but rather, it was based upon the federal government's request through the President that there be no increase in wages and prices which was followed by the wage-price freeze. In short, Algene's subsequent conduct reflects the respondent's

contention that there is a continuing contract.[1] *See Carr v. Settle Constr. Co.,* 11 Wn. App. 336, 522 P.2d 849 (1974); *Eagle Ins. Co. v. Albright,* 3 Wn. App. 256, 474 P.2d 920 (1970).

Algene also challenges the binding effect of the 1971 agreement by contending that the AGC had no authority to bargain for it, notwithstanding Algene's membership in AGC and its assignment of collective bargaining rights to AGC on October 14, 1970. Algene points out that on April 3, 1971, prior to the execution of the 1971 agreement, President Nixon instituted economic controls in the construction industry, followed by a 90-day freeze on all wages and prices, and none of this federal action was contemplated at the time Algene made AGC its agent. Algene argues that AGC's authority to act as its agent ceased when it obtained knowledge of such changes in federal law, and therefore Algene concludes it cannot be bound by AGC's approval of the 1971 agreement.

We cannot agree with this argument. The only source cited by Algene in support of its contention is Restatement (Second) of Agency § 116 (1958), in which it is indicated that a change of law of which an agent has notice but his principal does not, which materially changes the effect of the execution of the agent's authority, terminates such authority; however, Algene makes no showing that the federal economic controls eliminated the process of collective bargaining or otherwise rendered AGC's actions illegal, nor does it make any showing that AGC was any more aware

---

[1]It is significant that during the contested period of time, June 21, 1971, to December 31, 1971, Algene continued to submit its monthly reports and made its contributions at the old contract rate of 52 cents per carpenter hour, but refused to pay at the 73 cents per carpenter hour rate for the period beginning June 21, 1971, until October 31, 1971, or at the 93 cents per carpenter hour rate beginning November 1, 1971, to June 1, 1972. Further, as specifically required by the 1971 agreement, throughout 1972 Algene contributed at the rate set forth in the 1971 agreement. This conduct conclusively demonstrates that Algene considered itself bound by the 1971 contract, if not by the rate included in it. Only one conclusion can be reached from these facts: Algene regarded the 1971 collective bargaining agreement as binding upon it.

of the alleged change in law than was Algene, its principal. At no time prior to Algene's resignation from membership in AGC did it question or challenge AGC's authority to be its bargaining agent. The thrust of Algene's argument is that because it obeyed the President's request not to raise prices, it is unfair to permit what amounts to an increase in wages. Such an argument more properly would be addressed to the federal authorities. Under the circumstances of this case, the federal controls may have caused economic loss and hardship to Algene, but they did not operate to terminate the authority given by Algene to AGC, its designated bargaining agent. We conclude that Algene is estopped to deny the validity and binding effect of the 1971 collective bargaining agreement.

■ Finally, Algene contends that, even assuming the validity of the 1971 collective bargaining agreement, a compliance agreement was signed by Algene on March 2, 1972, in consideration of an accompanying oral agreement which constituted a full and complete compromise and settlement of Carpenters Trusts' claim for the delinquent trust contributions. In this connection, the affidavit of Algene's secretary-treasurer Gene Goosman states in part:

I told plaintiff's [Carpenters Trusts'] agents that I would not under any circumstances agree to pay wage and benefits increases retroactive to June 1, 1971. I told plaintiff's agents that before Algene would make such retroactive payments Algene would go out of business. After some discussion plaintiff's agents orally agreed to allow Algene to pay benefits retroactive to January 1, 1972 but to not require Algene to pay the increased benefits prior to January 1, 1972. Because the compliance agreement is a printed form not designed to be altered, this portion of the agreement was not put in writing. Before leaving each of plaintiff's agents agreed to these provisions. (There was also an agreement about wage increases not relevant to this lawsuit). It was agreed that Algene would give up its claim for return of trust payments made and the union and the trust would give up their claim to further back payments of increases in wages or benefits.

Respondent argues that Goosman's affidavit should not be

considered because it is based solely on parol evidence which would contradict the terms of the written document. We do not reach the question of whether such parol evidence is admissible to show a compromise under the circumstances presented because of the absence of any facts indicating that such a compromise agreement was ever made by the respondent, Carpenters Trusts. In this context, it is important to recognize the distinction between the Carpenters Trusts and the Union. In a suit involving a trust fund, the court in *Lewis v. Quality Coal Corp.*, 243 F.2d 769 (7th Cir. 1957), stated at pages 772-73:

> [T]he [union] has no title to the money in the fund, or right to recover same. It is in no way interested therein, except to see that the trustees perform their trust duties. [Citation omitted.] No person is legally interested in this controversy except plaintiffs, who, as trustees, claim the right to recover, and defendant who has agreed to pay the royalties demanded.

Thus, Carpenters Trusts is the beneficiary of, but not a party to, the 1971 collective bargaining agreement, and it is Carpenters Trusts—not the Union—that is legally entitled to collect the delinquent contributions. *See Wolfe v. Morgan*, 11 Wn. App. 738, 524 P.2d 927 (1974). Significantly, Algene presented no facts indicating that "plaintiff's agents" who participated in the alleged oral compromise had any authority to act for the Carpenters Trusts. It is Algene's burden to make such a showing. *See Olsson v. Hansen*, 50 Wn.2d 199, 310 P.2d 251 (1957). We conclude Algene raised no genuine issue of material fact, and that summary judgment was properly granted.

The judgment is affirmed.

HOROWITZ and JAMES, JJ., concur.