MEYERS *v.* JOSSELYN

[No. 85, October Term, 1956.]

*Decided February 13, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Richard H. Lerch* for the appellant.

*Gordon M. Allen* and *Paul T. McHenry, Jr.,* with whom were *Allen, Burch & Allen* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court No. 2 of Baltimore City that allowed to the appellee (plaintiff) the sum of $3,242.31 as found by the Court to be due under an alleged contract to pay a bonus to the plaintiff, who had been in the employment of the appellant (defendant).

The sole question involved is whether or not there was an enforceable promise on the part of the defendant to pay to the plaintiff an additional bonus for the year 1951.

The defendant has been a Certified Public Accountant for approximately 25 years, and has offices in Baltimore City. In the regular course of his business, he employs other accountants. He originally employed the plaintiff in November of 1945 at a weekly salary of $50.00. Over the years, the plaintiff's salary was gradually increased, so that when he left the defendant's employment in 1952 he was receiving $150.00 per week. At the end of each year, excepting 1945, the defendant also paid to the plaintiff bonuses that ranged from $600.00 to $1170.00.

The plaintiff contended, and the defendant admitted, that sometime in June of 1951 an arrangement was made with re-

spect to the payment of bonuses to the plaintiff to the effect that the defendant agreed to pay to him 25% of any "bonus pool" that the defendant might establish. The plaintiff testified this bonus pool was to be created from the profits of the office after an allowance to the defendant for his services and capital contributions, but he also testified there was no minimum figure mentioned for the bonus pool and no maximum placed on the amount the defendant could allow himself for services and capital investment, which, of course, left these two figures in the sole discretion of the defendant. There is a slight discrepancy in the plaintiff's and defendant's versions of arriving at the 25%, but not material to the final decision of the case.

On December 21, 1951, the defendant sent to the plaintiff a bonus of $1170.00 in a letter (Plaintiff's Exhibit No. 1) which, in part and insofar as it is material to this case, was as follows:

> "Enclosed herewith is your bonus check for 1951, broken down as follows:
>
> Bonus ........................... $1,170.00
> 20% withholdings ................. 234.00
>
> Net check ........................ $ 936.00
> "For your information, I have withheld from the profit and loss statement until collected the balance of $12,974.20 due from LaVeck."

The LaVeck case, referred to in the letter, was a tax case on which the defendant's office had been retained. The fees to the defendant from the case amounted to a total of $32,543.70. At the time of the writing of the letter in December, 1951, the sum of $12,974.20 of this fee had not been collected, and, by agreement with the client, LaVeck was not required to pay the same until August of 1952. The sum was actually received by the defendant in the summer of that year.

Five or six days after receiving the above letter, the plaintiff approached the defendant and asked him what his intentions were with reference to the LaVeck account. The

plaintiff testified: "At that time I was unable to get any satisfactory explanation or commitment from him as to what his intentions were."

In April, 1952, the defendant wrote another letter to George Rudigier, a fellow employee of the plaintiff, who likewise was to receive 25% of the bonus pool, but who had left the employment of the defendant to enter the armed services, which read, in part, as follows:

> "When you were in to see me on, Saturday, March 1, 1952 I told you I would re-examine the 1951 earnings statement in view of your having raised a question as to what bonus, if any, you might have coming to you. * * *.
>
> "The 1951 earnings would have been very disappointing except for the closing of the LaVeck case. In fact, the earnings without the LaVeck premium are only 76.4% of the basic earnings I have always considered as due me before any bonus fund actually accrued for distribution. * * *.
>
> "As I told you when you were in to see me, it did not occur to me when I was working out the 1951 bonus that there was any bonus due you for 1951 and after reviewing all of the facts, I am still of the same opinion."

The defendant further testified that in calculating the 1951 bonus he had used the figure of $26,000 for his services and capital investment, and had not included in the bonus pool the $12,000 (round figures) due under the LaVeck account, but still uncollected. He stoutly maintained, however, that he had always reserved the right to fix the amount he was to set for his own services, and any sum that he might desire to allocate to the bonus pool. In answer to a question from the Court, he replied: "I used $26,000 in this computation (1951, for defendant's services and capital outlay). Perhaps if the twelve (due from the LaVeck account) had been in I may have taken half of it. I may have taken ten. I may have taken all of it. It is hard to say what you would have done at the time."

In his general practice of retaining complete control over the amount of bonuses to be paid, the defendant was corroborated by two witnesses produced by the plaintiff. And, in regard to the specific year under consideration, 1951, the defendant is directly and specifically corroborated repeatedly by the plaintiff. To illustrate we quote from plaintiff's frank testimony:

"Q. Mr. Meyers never told you when LaVeck's was collected it would be added to the bonus and you would get a percentage. You have testified to that. He never told you that, isn't that correct? A. That's correct. * * *

"Q. In other words, you understood that Mr. Meyers was to add $12,000 on when collected to the bonus pool, is that correct? A. Correct.

"Q. Not to just go into the general office profit and loss statement, but to be added specifically to the bonus pool? A. Of 1951, a recomputation.

"Q. Were you ever told that by Mr. Meyers? A. That was the point I could never get him to commit himself on.

"Q. Right. So you were never told by Mr. Meyers that LaVeck's $12,000 would go into the bonus pool? A. No. He always evaded the issue. * * *

"Q. And there was also never any agreement by Mr. Meyers to pay you for 1951 anything over and above the $1170? He never made any expression or commitment to that effect, for 1951, to pay you in excess of $1170, is that not correct? A. Yes. He refused to even acknowledge any question on it. * * *

"Q. Right. So you were never told by Mr. Meyers that LaVeck's $12,000 would go into the bonus pool? A. No, he always evaded the issue."

And in reply to another question from the Court as to why he left the defendant's employment, the plaintiff replied: "My reason for leaving was that in view of the light of the

circumstances that had arisen and *my inability to get Mr. Meyers to agree to anything,* I was discouraged as to my prospects there and determined to set up my own practice." (Emphasis supplied).

In addition, the plaintiff wrote a letter to the defendant about a month after he had left the defendant, in which he stated: "* * * I have not received any expression of principle from you * * * with reference to the adjustment made at December 31, 1951 * * *." On cross-examination he admitted that this meant he had received no promise from the defendant to pay him any additional bonus for 1951.

From the above, the Chancellor below determined there was a binding agreement between the plaintiff and the defendant wherein the defendant had agreed to pay to the plaintiff 25% of the balance due, but then unpaid, by LaVeck. In this, we think the learned Chancellor was in error. There has never been any doubt that when an alleged agreement is so vague and indefinite that the Court finds it impossible to determine substantially the full intention of the parties, it must be held unenforceable, because the Court cannot make an agreement for the parties. *Hoffman v. Chapman,* 182 Md. 208, 211, 34 A. 2d 438. Cf. *Rocklin v. Eanet,* 200 Md. 351, 89 A. 2d 572.

The most that can be gathered from what has been set out above is: that the defendant agreed with the plaintiff that the defendant would set up a bonus pool for 1951 (and defendant paid him $1170.00 therefrom, the same being a very substantial percentage of his salary for that year); that the plaintiff was to receive 25% of this bonus pool; that this bonus pool was to be obtained from the profits from the defendant's business, after deduction of an amount for defendant's services and capital investment; and that the amount of the bonus pool and the amount to be set for defendant's services and capital investment were to be determined solely by the defendant. This being the situation, this Court has no authority to instruct the defendant as to what the amounts shall be; and, assuming the defendant tentatively had set in his own mind the sum of $26,000 for his services and investment, this Court, under the above circumstances, has no

right to prevent his having changed his mind and having set different amounts.

. Apparently, the plaintiff attempted on numerous occasions to get the defendant to enter into such an agreement as he contends now exists; but, in his testimony, the plaintiff repeatedly demonstrated that the defendant refused so to do. The facts in this case seem to present the problem that faced the Pennsylvania Court, when it said:

> "It is clear from the testimony of the plaintiff that he repeatedly urged the defendant to agree upon the terms, but that he as often refused and postponed the matter from time to time. The jury were not at liberty to fix or determine a basis for the division of the profit, when the parties themselves had failed · to reach any agreement as to that very material matter."

*Butler v. Kemmerer, 67 A. 332.*

We hold that any "agreement" between the plaintiff and the defendant, relating to a bonus due to the plaintiff by the defendant for the year 1951, has been carried out; and, the agreement, as it is alleged to be by the plaintiff, is too vague and uncertain to be enforceable. *Thomson v. Gortner,* 73 Md. 474, 21 A. 371; *Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A. 2d 563; *Mackintosh v. Kimball,* 92 N. Y. S. 132; *Petze v. Morse Dry Dock & Repair Co.,* 109 N. Y. S. 328; *Fairplay School Township v. O'Neal* (Ind.), 26 N. E. 686.

Having reached this conclusion, it is unnecessary to consider any other questions raised by the appellant.

> *Decree reversed, with costs, and case remanded for the entry of a decree dismissing plaintiff's bill of complaint.*