[No. 2126-1.    Division One.    July 29, 1974.]

ROBERT T. WOLFE et al., Appellants, v. THERON K. MORGAN
et al., Respondents.

Donaldson & Kiel, P.S., Duane D. Kiel and Robert A. Bohrer, for appellants.

Breshkin, Rosenblume & Robbins, Arnold B. Robbins and Stephen A. Cohen, for respondents.

CALLOW, J.—The issue presented is whether employee benefit trusts are third-party beneficiaries entitled to recover attorneys' fees under the terms of a collective bargaining agreement and a surety bond.

The action was brought on behalf of three employee

benefit trusts against a bond issued by the United Pacific Insurance Company. The trial court granted a partial summary judgment dismissing the claim with prejudice. The union has not appealed.

The trustee of the Resilient Floor Covering Pension Fund, the Carpet, Linoleum and Soft Tile Layers Health and Welfare Fund, and the Puget Sound Carpet, Linoleum and Soft Tile Layers Joint Apprenticeship Trust Fund appeals on behalf of those trusts.

On February 28, 1969, Theron K. Morgan and William A. Potts, d/b/a Custom Carpet Installers, signed a collective bargaining agreement with the Carpet, Linoleum and Soft Tile Layers Union Local No. 1238. Pursuant to this agreement, Morgan, Potts, and Barkey, d/b/a Custom Carpet Installers, secured a surety bond from the United Pacific Insurance Company on November 18, 1969, whereby, in return for the premiums paid, the surety agreed to pay certain sums due under the collective bargaining agreement, should Custom Carpet Installers fail to pay. The collective bargaining agreement read in pertinent part as follows:

ARTICLE 15 — TRUST PAYMENTS

| NAME OF FUND * * * | RATE OF CONTRIBUTION |
|---|---|
| Resilient Floor Covering Pension Trust Fund | $.30 effective Sept. 1, 1969 |
| Carpet, linoleum and Soft Tile Layers Health and Welfare and Dental Trust Fund | $.25 effective Sept. 1, 1969 |
| Puget Sound Carpet, linoleum and Soft Tile Layers Joint Apprenticeship Trust Fund | $.03 for each hour worked |

*Section 2:* Such contributions together with the required reports shall be forwarded to the Bank of California or such other bank as may be mutually agreed upon, at 815 — 2nd Avenue Seattle, Washington. The report and payment must be postmarked by the post office no later than the 15th day of the month following the month in which the hours were worked.

*Section 3:* In the event any Employer fails to make any of the contributions as required by this Article, or by Article 6, such Employer shall be required to pay, in addition to the principal sum due, liquidated damages in the amount of $10.00 for each month's delinquency or ten percent of the amount due, whichever is greater, and shall also be liable for reasonable attorney's fees and the costs of collection. Reasonable attorney's fees shall be as follows: 20% of the amount due if collected prior to suit, the filing of a lien, or arbitration hearing, and 33% of the amount due if collected after the commencement suit, the filing of a lien of an arbitration hearing is held. In the event suit is initiated, it is agreed that such suit shall be filed in a court of competent jurisdiction (either state or federal) located in King County, Washington.

*Section 4:* By entering into this Agreement, the Employer adopts and agrees to be bound by the terms of the Trust Agreements establishing the funds referred to in this Article and agrees to be bound by all past and future lawful acts of the Trustees of each such Fund.

The contractors bond reads in pertinent part as follows:

### CONTRACTORS BOND

SECTION 1: Carpet, Linoleum and Soft Tile Layers Union Local No. 1238 (referred to as the Union) and CUSTOM CARPET INSTALLERS, a partnership consisting of John K. Barkey, Theron K. Morgan and William Potts (referred to as the Employer) are parties to a collective bargaining Agreement (referred to as the Contract) which requires the Employer to pay wages, fringe benefits, trust fund payments, damages and other costs including but not limited to arbitrator's fees. (The purpose of this bond is to insure the prompt payment of all financial obligations imposed by the Contract.)

SECTION 2: UNITED PACIFIC INSURANCE COMPANY (referred to as the Surety) is a firm licensed to do business in the State of Washington and is engaged in the bonding industry in the State of Washington. The surety in consideration of a premium paid by the Employer, agrees to pay to the Union all sums (not to exceed $2,500) due as a consequence of the Employer's failure to abide by the terms of the Contract.

SECTION 3: (In the event the Union or any of the trusts

retain legal counsel to assist in the collection of moneys due under the terms of the contract, the surety is authorized and directed to pay, in addition to the moneys due for wages and fringe benefits, a reasonable attorney's fee to such attorney.) In the event collection is made prior to suit, the filing of a lien, or arbitration, the fee shall be 20% of the amount collected, and if collection is made after the suit is commenced, a lien filed or an arbitration hearing is held, the fee shall be 33% of the amount collected. Suit on this bond shall be commenced in any court of competent jurisdiction in state or federal court in King County, Washington, and the surety is authorized and directed to act as the Employer's agent for purposes of accepting service of process in the event of suit and is authorized and directed to act in its complete discretion with respect to the settlement of any such suit.

SECTION 4: In the event the claims pending at any one time exceed the penal sum of this bond, the claims presented shall be satisfied from the bond as follows:
(1) Wage claims;
(2) Claims for fringe benefits;
(3) All others equally.

The surety will give the Union 30 days' notice prior to the cancellation of this bond. In no event shall the surety's aggregate liability under this bond exceed the sum of $2,500.

After the lawsuit was initiated in October 1970, certain sums were collected on behalf of the union and the trust funds from Custom Carpet Installers. These payments represented amounts due from August 1970 through November 28, 1970, the date of cancellation of the surety contract. The supplemental complaint, dated July 15, 1971, was filed asking for $2,539.93 in attorneys' fees under section 3 of the collective bargaining agreement computed as 33 percent of the total late payments of $7,619.79 collected from the employer. A partial summary judgment granted in favor of the surety dismissed the claim of the trusts against the bond. The surety's liability to the union was ultimately resolved as $734.90 by a summary judgment for that amount. The trustee has appealed on behalf of the trusts, and the surety has cross-appealed contending that the judg-

ment in favor of the union for $734.90 in attorneys' fees should be set aside.

■ ■ If the trusts were donee beneficiaries in contemplation of the contracts between the employer, the union, and the surety, then the trusts are entitled to maintain the action as third-party beneficiaries and enforce the contract to the extent it is enforceable by the union. *Kinne v. Lampson*, 58 Wn.2d 563, 364 P.2d 510 (1961). However, if they only incidentally benefit from the contracts, then the trusts have no enforceable interest. To constitute the trusts as donee beneficiaries, it must appear that the contracts were designed for their benefit or that the intended purpose of the parties was to bestow a benefit or gift upon the trusts. *Layrite Concrete Prods. of Kennewick, Inc. v. H. Halvorson, Inc.*, 68 Wn.2d 70, 411 P.2d 405 (1966). The purpose and intention of the parties concerning the trusts are to be gleaned from the contracts as a whole construed in the light of the circumstances under which they were made. *Ridder v. Blethen*, 24 Wn.2d 552, 166 P.2d 834 (1946); *Grand Lodge of the Scandinavian Fraternity of America, Dist. 7 v. United States Fidelity & Guar. Co.*, 2 Wn.2d 561, 98 P.2d 971 (1940). *See also* 72 C.J.S. *Principal & Surety* § 264 (1951).

*Vikingstad v. Baggott*, 46 Wn.2d 494, 496, 282 P.2d 824 (1955), quoting Annot., 81 A.L.R. 1271, 1287 (1932), stated as follows:

> "If the terms of the contract *necessarily require the promisor to confer a benefit upon a third person,* then the contract, and hence the parties thereto, *contemplate a benefit* to the third person . . . [citation]; and this should be sufficient to enable the latter to enforce the contract, although it also worked to the advantage of the immediate parties thereto . . . [citations], and although the actual purpose motivating the parties in making the provision in question was the purely selfish one of benefiting or protecting themselves, rather than of benefiting the third person.

*Vikingstad* was cited in *American Pipe & Constr. Co. v.*

*Harbor Constr. Co.*, 51 Wn.2d 258, 266, 317 P.2d 521 (1957) which noted that in the *Vikingstad* case:

> we recognized the rule stated . . . that such "intent" is not a desire or purpose to confer `a benefit upon the third person, nor a desire to advance his interests, but an intent that the promisor shall assume a direct obligation to him.

The reasoning is carried forward by *McDonald Constr. Co. v. Murray*, 5 Wn. App. 68, 70, 485 P.2d 626 (1971) as follows:

> A third-party beneficiary is one who, though not a party to the contract, will nevertheless receive direct benefits therefrom. In determining whether or not a third-party beneficiary status is created by a contract, the critical question is whether the benefits flow directly from the contract or whether they are merely incidental, indirect or consequential. 17 Am. Jur. 2d *Contracts* § 305 (1964). An incidental beneficiary acquires no right to recover damages for nonperformance of the contract. Restatement of Contracts, § 147 (1932).

In an unquoted section of the agreements, it is recognized that the trust funds may submit a claim against the employer, and the surety will be bound by an umpire's decision if that procedural route is followed. As we read the contracts together, the purpose of the bond is to insure the prompt payment of all financial obligations imposed by the collective bargaining agreement including payments to the trust funds; and, if the trusts retain counsel to assist in the collection of moneys due under the terms of the trust agreements, the surety is directed to pay reasonable attorneys' fees. These provisions indicate that the collective bargaining agreement and the trust agreements were entered into in contemplation of each other and are to be construed together. It is apparent that the bond was secured to insure the prompt payment of all financial obligations imposed by the collective bargaining agreement. The terms of the documents are intertwined and interrelated in such a way that it follows that the parties contemplated that the trusts would be directly benefited by the terms of the surety bond

and were to be donee beneficiaries entitled to bring direct action to enforce its terms. *See Brower Co. v. Noise Control of Seattle, Inc.,* 66 Wn.2d 204, 208, 401 P.2d 860 (1965).

The surety contends that section 3 of the bonding agreement which sets attorneys' fees at 20 percent or 33 percent of the amount collected, depending upon whether the collection was made before or after the bringing of suit, is void as (1) an unlawful penalty, (2) a violation of the code of professional responsibility, and (3) an unlawful interference with the court's power to fix reasonable attorneys' fees under RCW 4.84.020.

RCW 4.84.020 reads as follows:

> In all cases of foreclosure of mortgages and in all other cases in which attorneys' fees are allowed, the amount thereof shall be fixed by the court at such sum as the court shall deem reasonable, any stipulations in the note, mortgage or other instrument to the contrary notwithstanding; but in no case shall said fee be fixed above contract price stated in said note or contract.

Whether attorneys' fees are reasonable involves a question of fact which must be answered in light of the particular circumstances of each individual case. *In re Renton,* 79 Wn.2d 374, 485 P.2d 613 (1971). In each case, the fee that the parties have bargained for should be given great weight in judging its reasonableness, but where the amount of attorneys' fees is unconscionable or works a penalty, the award should be less than that provided for in the contract. *See National Bank v. Myers,* 75 Wn.2d 287, 450 P.2d 477 (1969); *In re Greer,* 61 Wn.2d 741, 380 P.2d 482 (1963). The trial court is the final arbiter of the properness of attorneys' fees subject to court approval under statute or contract. The reasonableness of the fees provided for in the bonding agreement has yet to be determined. That determination ultimately must be made by a remand of this action. *Bosko v. Pitts & Still, Inc.,* 75 Wn.2d 856, 454 P.2d 229 (1969). Likewise, the award to the union of $734.90 as attorneys' fees under section 3 of the bonding agreement must be reexamined as to reasonableness under RCW

4.84.020 as guided by (CPR) DR 2-106. The summary judgment to the union does not disclose whether the award of $734.90 represented reasonable attorneys' fees or was reached by the purely mechanistic formula of the contract without any evaluation of the reasonableness of the result reached. *Kimball v. PUD 1*, 64 Wn.2d 252, 391 P.2d 205 (1964).

The judgments are reversed, and the cause remanded for further proceedings consistent with this opinion.

SWANSON, C.J., and JAMES, J., concur.