**In re Phil L. HANSEN Disciplinary Proceeding.**

No. 15613.

Supreme Court of Utah.

Oct. 6, 1978.

Richard L. Dewsnup, Gerald R. Miller, E. Scott Savage, Alan L. Sullivan, VanCott, Bagley, Cornwell & McCarthy, John L. Black, Roberts, Black & Dibblee, Salt Lake City, for appellant.

Craig Stephens Cook, Phillip R. Fishler, Salt Lake City, for respondent.

CROCKETT, Justice:

This proceeding reviews the findings and determination of the Utah State Bar that Phil L. Hansen has engaged in unprofessional conduct and its recommendation that he be disbarred for one year.

The alleged misconduct relates to his agreeing to represent Mrs. Kay Lou Behunin in a civil suit brought against her by Theodore H. Burr and during the pendency thereof undertaking to defend Mr. Burr in a criminal action brought against him; that he thus had a conflict of interest in violation of Rule IV, Canon 5, Disciplinary Rule 5–105; and that for the service to Mrs. Behunin he charged an excessive fee in violation of Rule IV, Canon 2, Disciplinary Rule 2–106.

There is no substantial dispute about the facts relating to Mrs. Behunin's initial hiring of Mr. Hansen and the agreement as to the fee. Mrs. Behunin is the president and owner of the Kay Lou Chevrolet-Oldsmobile corporation in Richfield, Utah. Mr. Burr, as the former owner, brought suit against the corporation seeking to recover about $25,000 and for an accounting. Mrs. Behunin, her business manager, and her bookkeeper, came to Mr. Hansen's office in Salt Lake City to see about retaining him to defend that suit. He told them that he would do so for a fee of $5,000, payable in advance, which would cover all aspects of the litigation, whether by settlement or trial. They returned to Richfield; and later accepted Mr. Hansen's proposal and paid him the fee.

During the pendency of that suit, Mr. Burr was charged with a felony of receiving stolen property in a totally unrelated matter. He also sought and obtained the services of Mr. Hansen in his defense.

There is dispute in the evidence as to what happened thereafter in regard to the alleged conflict of interest. Mr. Hansen's position is that, in awareness of the necessity of obtaining Mrs. Behunin's consent, he explained the situation to her and obtained her verbal consent, or at least that she consented by her silence in failing to respond to his request. Mrs. Behunin's version is that she heard it "rumored" that Mr. Hansen was representing Mr. Burr; that she considered this to be improper, which prompted her to contact the Utah State Bar through a letter dated August 25, 1976. In it, she expressed concern over the conflict of interest and asked about obtaining the return of the fee she had paid Mr. Hansen. The Bar sent a copy of that letter to him.

Shortly thereafter Mrs. Behunin and her husband again came to Mr. Hansen's office. He told her that he saw no difficulty concerning any conflict of interest and that it might even redound to her benefit; and to "think it over and let him know what she wanted to do". She did not contact him further. But the Bar sent him a letter dated September 27, 1976, stating that it had advised Mrs. Behunin that she need not talk to him. Mr. Hansen then sent her a letter dated October 1, 1976, the pertinent parts of which state:

At the discussion that I had with you and your husband, it was agreed that I was to have your matter continued and you were to contact me as to your position relative to the continuation of my representing you. When we were unable to meet, I had the matter continued without date by stipulation with counsel for Mr. Burr and have continued to prepare your defense, and counterclaim.

It has been assumed that I am still your lawyer, and the same assumption will continue unless you advise me to the contrary within five days from the date of this letter.

\*      \*      \*      \*      \*      \*

*This office is proceeding with the assumption that we are still representing you* and that we have no disagreement. If you have any thoughts to the contrary, please contact me at your convenience to otherwise inform me.

Mrs. Behunin made no response to the letter until after the instant disciplinary proceedings were commenced by the Bar.

In regard to the matter of accepting employment where there is a conflict of interest Disciplinary Rule 5–105, provides:

A. A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR5–105(C).

\*      \*      \*      \*      \*      \*

C. In the situations covered by DR5–105(A) and (B), a lawyer may represent multiple clients *if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation.* [All emphasis herein is added.]

It will be noted from the emphasized language that, though the purpose of the rule is to prevent an attorney from accepting employment by someone whose interest or disloyalty to his client, the rule order to guard against possible conflict of interest or disloyalty to his client, the rule permits such representation if, after full disclosure, the client consents to such representation. From Mr. Hansen's point of view, there may seem to be some justification for his going forward and representing Mr. Burr because he had at least discussed the matter with Mrs. Behunin and she gave him no firm decision as to whether she would give her consent. The matter of critical importance here is that the burden would be upon the attorney to show that he had made full disclosure and had obtained his client's consent, before he could so proceed. From the findings and recommendation of the Bar Commission, it is to be assumed that he did not sustain that burden.

In response to the charge that the fee exacted by Mr. Hansen was excessive, it

is argued on his behalf that he was at liberty to demand any fee he desired and that Mrs. Behunin was equally at liberty to accept or reject his proposition. In most circumstances, there would be considerable merit in that argument because it is in accord with the ideas of individual liberty and free enterprise for which we have great respect and attachment. However, there are certain aspects of the practice of law which deter us from agreeing with the idea that a lawyer has complete and unfettered privilege to demand any fee which a person in distress may be willing to pay.[1]

The practice of law is a profession whose members are granted a special privilege of holding themselves out as having the education, the skills and the integrity to give help and guidance to others in their affairs and particularly when they are in trouble. This includes that the attorney will become unreservedly identified with his client's interests and protect his rights. It means not only in dealing with the client's adversary, but also that the attorney will adhere to the ideals of honesty and fidelity with the client himself; and that he will not use his position to take any unfair advantage of the special confidence which the client is entitled to repose in him.

To be considered in connection with the problems presented in this proceeding it should be appreciated that Mr. Hansen, as well as all other members of the profession, enjoy the benefits or suffer the detriments of the profession's public image. For that reason each should, to the best of his ability, contribute to its betterment and public good will by conforming to the rules and regulations established for that purpose.

In order to fit into the matrix of what has been said above about the particular privileges of the legal profession and its special relationship to the public welfare, the practice of law is subject to rules of conduct and of discipline as approved by the Supreme Court of the State, which includes regulations as to fees that may be charged. Rule 2–106A provides that: "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." And subsection B thereof sets forth the various factors to be considered in determining what reasonable fees should be.

The other side of the proposition under discussion is that, subject to the considerations and restraint just set forth above, an attorney is and should be free to contract with anyone who seeks his services, both as to the conditions upon which it will be rendered, and the compensation to be paid therefor.[2]

Our review of these proceedings before the Disciplinary Committee prompts us to make some general observations about such proceedings. In the activities of the Bar Commission in responding to complaints, conducting investigations and in the holding of hearings and making determinations thereon, it is in effect acting as arm of this Court. The performance of the important responsibility of holding such hearings should be regarded as in the nature of judicial proceedings; and should be carried on, both by those conducting the inquiry and those responding thereto, without any conduct or comments which might seem to indicate undue personal familiarity, much less anything resembling impertinence. There should be the same standards of decorum and respect as are appropriate to the formality and dignity of all judicial proceedings.

We are constrained to agree with the determination of the Bar Commission that Mr. Hansen's conduct with respect to his representation of Mrs. Behunin and what was done about the alleged excessive fee charged therefor, and his acceptance of

---

1. In regard to any controversy over a claim of excessive fees, it is appropriate to observe that the courts will refuse to enforce any contract if it appears to be clearly unconscionable. See *In Re Phelps*, 204 Kan. 16, 459 P.2d 172 (1969); *Wolfe v. Morgan*, 11 Wash.App. 738, 524 P.2d 927 (1974).

2. See statement of this Court in *Thatcher v. Ind. Comm.*, 115 Utah 568, 207 P.2d 178 (1949); 7 C.J.S. Attorney and Client § 181.

employment by her opponent to defend him in a criminal proceeding, placed him in a position where she could legitimately question her entitlement to his complete loyalty to her interests. His conduct as discussed herein does not measure up to the high standard of fidelity in dealing with clients that members of the Bar should maintain, but constitutes a breach of his professional duty and of his contract with her, so he should not be entitled to the fee paid him for the promised services.

Notwithstanding what has just been said, and though Mr. Hansen's actions are not to be entirely condoned, in fairness it should be kept in mind that there is some basis for extenuation. It is without dispute that he did make some effort to comply with Disciplinary Rule 5–105(C) by obtaining his client's permission, and that the failure in that regard may be accounted for by some misunderstanding or lack of communication between Mr. Hansen and Mrs. Behunin; and that this may have resulted in part at least from misunderstanding or lack of communication by the Bar itself.

We note our awareness that when there has been a deviation from proper professional standards there should be some appropriate penalty, not only for the effect upon the attorney, but as a salutary measure for the benefit of the Bar and the public. Yet, there are other matters of importance bearing on the proper judgment herein. The disbarment of an attorney for a period of one year, thus interrupting his practice and depriving him of his means of livelihood, has a number of serious effects upon him, his clientele and those dependent upon him.[3]

Upon our consideration of all the pertinent factors we are unable to see justification for imposing the recommended penalty that the attorney be disbarred for one year.[4] It is our conclusion that the judg-

ment best calculated to accomplish the purposes of this proceeding is to call attention to such impropriety as has been discussed herein and to require Mr. Hansen to recognize that he breached his contract with Mrs. Behunin and should refund to her the fees paid him. Further, that he is given 30 days to comply with this order, and if he fails therein, to be suspended from the practice of law until he does so comply.

No costs awarded.

ELLETT, C. J., and HALL, J., concur.

WILKINS, Justice, concurring and dissenting:

I concur in the judgment of the Court that Mr. Hansen should not be suspended from the practice of law for a period of one year, but dissent from the mandate that he be ordered to return the fees paid. There is, I acknowledge, no evidence concerning any negotiations between Mr. Hansen and Mrs. Behunin in the record but Mr. Hansen's attorneys informed this Court on the day this matter was heard that negotiations had occurred and part of the fee had been returned to Mrs. Behunin. If the parties have negotiated a settlement, we should not substitute, sua sponte, our judgment for their resolution of the matter, particularly when a record on this point could easily be furnished to this Court.

MAUGHAN, J., concurs in the views expressed in the concurring and dissenting opinion of WILKINS, J.

---

3. See statement in *In Re Hansen*, Utah, 584 P.2d 805 (1978).

4. That the recommendation of the Bar is only advisory and that the sanction or penalty to be imposed is for this Court to determine, see *In*

*Re Fullmer*, 17 Utah 2d 121, 405 P.2d 343 (1965); *In Re Birdwell*, 25 Utah 2d 1, 474 P.2d 116 (1970); *State ex rel. Schwab v. State Bar Association*, 80 Wash.2d 266, 493 P.2d 1237 (1972).