688 P.2d 601
**In the Matter of a Member of the State Bar of Arizona, Burton Melvin BENTLEY, Respondent.**

No. SB–284.
State Bar No. 81–3–5W.

Supreme Court of Arizona,
In Banc.

May 29, 1984.

Richard Himelrick, State Bar Counsel, Scottsdale, for State Bar.

Langerman, Begam, Lewis & Marks by Frank Lewis, Phoenix, for respondent.

CAMERON, Justice.

Respondent, Burton M. Bentley, filed objections to the findings and recommendations of the State Disciplinary Board that he violated the Code of Professional Responsibility and that he be suspended from the practice of the law for thirty days. We have jurisdiction pursuant to Rule 36(d), Rules of the Supreme Court, 17A A.R.S.

The issue we must answer in this appeal is:

Is it proper for an attorney, after representing one party against a second party and receiving the consent of both parties, to perform legal work for the second party unrelated to the former matter and then later file suit against the second party for and on behalf of the first party?

The facts in this matter follow. In 1968 respondent represented Mrs. Shirley Walker on a contingency fee basis in an action for debt against Mr. Jack O. Nutter. A judgment was obtained against Nutter. The parties entered into an agreement whereby Nutter was to pay Walker in periodic payments. The respondent withdrew from the practice of law from 1970 until 1978 to go into business. Upon his return to the practice of the law, he learned Walker still had not been paid by Nutter. Respondent again brought an action against Nutter and again obtained a new judgment against Nutter. Respondent recorded this judgment in every county in the state. As a real estate promoter, Nutter found it very difficult to do business because of those recordings. Nutter, with the knowledge and approval of his attorney, began directly negotiating a settlement agreement with respondent. They drafted an

agreement, which Walker and Nutter's attorney approved. The agreement provided that the Nutters, "JUDGMENT DEBTORS", would make periodic payments to Walker. The agreement also provided for a promissory note to Walker from Nutter and that respondent would hold some stock belonging to Nutter as security, and further:

(4) Notwithstanding anything in this Agreement to the contrary, JUDGMENT DEBTORS do hereby expressly represent to WALKER as follows:

(a) That they are engaged in divers[e] business transactions now in effect or which may come into being from and after the date of the execution of this Agreement; and

(b) That WALKER'S attorney, Burton M. Bentley, with full consent of WALKER has agreed to render professional services to JUDGMENT DEBTORS, or either of them, in negotiating and consummating business transactions, or in connection with litigation in which JUDGMENT DEBTORS are now or may become involved in the future, all of which professional services shall be paid for by JUDGMENT DEBTORS as per the mutual agreement of said Attorney and JUDGMENT DEBTORS; and

(c) None of the foregoing shall be deemed to restrain said Attorney from seeking to enforce this Agreement or Promissory Note executed concurrently herewith or from executing upon any security heretofor or hereafter given WALKER for the performance thereof, or from seeking to obtain one or more judgments against JUDGMENT DEBTORS or any other person or persons, or any other entities owned and/or controlled by JUDGMENT DEBTORS or any of them, or from seeking any other lawful remedy to compel performance of this Agreement in the event of a default; and

\* \* \* \* \* \*

(e) That JUDGMENT DEBTORS shall forthwith disclose to said Attorney the full nature of each and every such business transaction as to which Bentley's services are requested, and JUDGMENT DEBTORS shall not by subterfuge or otherwise divert moneys from said business transactions to any third party in order to defeat the interest of WALKER therein; \* \* \*.

Nutter reviewed the agreement with his attorney before signing. Nutter claims that because respondent had harassed him and obstructed his ability to do business through vigorous collection efforts, Nutter's attorney advised Nutter he had no choice but to sign the agreement. Nutter's attorney stated that in his opinion Nutter had not been harassed and that Nutter did have a choice in signing the agreement.

Nutter's attorney wrote respondent suggesting the existence of a possible conflict of interest in respondent's acting as Nutter's attorney "with reference to litigation involving all future business transactions." Respondent interpreted this to mean he should not represent Nutter in any litigation, and responded by letter that "so long as that remains your opinion this office shall refrain from further representation." Respondent did not represent Nutter in any matter involving litigation or in any matters in which Walker was involved, or in regard to any matter connected with the settlement agreement. Respondent did, however, accept a $3,000 retainer from Nutter and advised him in several business ventures and investments.

Before accepting this retainer respondent wrote Walker requesting permission to represent Nutter and mentioned that "as his attorney, I will become privy to certain information relative to his assets [and] would attach such assets ... to satisfy the outstanding judgment." Walker responded by letter and granted permission "providing, of course, that my interests come before those of Mr. Nutter."

Some fourteen months after respondent last advised Nutter, Nutter again defaulted on the payments to Walker. Respondent filed suit against Nutter, and Nutter brought this matter to the attention of the Arizona State Bar. Respondent subse-

quently withdrew from representing Walker in the matter.

The Local Administrative Committee made the following findings of fact:

1. That respondent undertook and was paid for representing Mr. Nutter while at the same time representing Mrs. Walker, an adversary of Mr. Nutter's for several years.

2. That permission to represent both parties was given by both Mrs. Walker and Mr. Nutter in writing.

\* \* \* \* \* \*

4. That Mrs. Walker's consent that Bentley represent Nutter was on the condition that her interests came before those of Mr. Nutter. That Bentley agreed to this condition.

5. That it was predictable, at the time Bentley undertook to represent Nutter, that Walker would have to sue Nutter and or sell stock of Nutter's which had come into Bentley's possession. That Walker actually did bring a further law suit against Nutter with Bentley representing her, and the stock was sold while Bentley was also representing Nutter.

6. It was not obvious that Bentley could adequately represent both Walker and Nutter even though a consent by each was given.

\* \* \* \* \* \*

10. That undertaking the representation of both Nutter and Walker under these circumstances was an impermissible conflict of interest in violation of DR 5–105(A).

The committee recommended respondent be censured. The State Disciplinary Board adopted the committee's findings of fact but voted six to one to recommend the suspension of respondent from the practice of law for thirty days. Respondent objected to this recommendation.

The rule respondent is charged with violating, DR 5–105, states in pertinent part:

DR 5–105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

\* \* \* \* \* \*

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

Rule 29(a), Ariz. Rules of the Supreme Court, 17A A.R.S.

Respondent points out that he never represented Nutter in litigation or in any matter related to Walker or the settlement agreement, and fourteen months elapsed between the last time respondent advised Nutter and the time the last action was filed after Nutter defaulted on the payments. Therefore, respondent claims that there was no impermissible conflict of interest. Even if there was a conflict, respondent contends the parties consented to the dual representation after a full disclosure of the relevant facts pursuant to DR 5–105(C) and therefore the respondent did not act unethically. Respondent insists any settlement agreement would have included a provision requiring Nutter to disclose his assets, and therefore anything respondent might have learned would have only been information Nutter would have had to disclose anyway under the agreement. Therefore, respondent claims there was no improper action on his part.

The Arizona State Bar, however, claims when Nutter's past payment record is considered, the chance of future conflict was obvious at the time respondent agreed to represent Nutter. The fact that respon-

dent only represented Nutter on unrelated matters is not a helpful distinction; "it is the fact that you have to sue him * * * that makes the representation inadequate down the road." We agree.

■ Admittedly, while it is usually improper to simultaneously represent opposing parties, *see In re Maltby*, 68 Ariz. 153, 155, 202 P.2d 902, 903 (1949), it is not always so. *See Matter of Hansen*, 586 P.2d 413, 415 (Utah 1978) (attorney represented civil suit opponent in criminal proceeding).

An ethics opinion of the state bar sets forth the law succinctly:

> DR 5–105(A) requires a lawyer to decline proffered employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of such employment, and DR 5–105(B) prohibits a lawyer from continuing multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client. However, both these sections are expressly qualified by DR 5–105(C), which permits the representation of multiple clients if it is obvious that the lawyer can adequately represent the interests of each and if each consents to such representation after a full disclosure by the lawyer of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each client.
>
> We hold that a lawyer may simultaneously represent in unrelated transactions multiple clients who have differing interests so long as (1) the lawyer obtains the express consent of all such clients after a full disclosure to each of them of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each, and (2) the lawyer can in fact adequately represent the interests of each client.

Arizona Ethics Opinions, 72–16 (29 September 1972). In *Matter of Evans*, 113 Ariz. 458, 556 P.2d 792 (1976), we stated that while there was authority "that an attorney may represent two clients in the preparation of an agreement and then sue one of the parties to the agreement * * * [w]e are not, however, convinced that this is the better rule." *Id.* at 461, 462, 556 P.2d at 795, 796.

■ The problems faced by respondent illustrate why an attorney should be cautious in accepting simultaneous employment from two parties who have an adverse interest. No matter how well-meaning the attorney may be, the representation is pregnant with ethical problems. In the instant case, we do not believe that Walker's interest was neglected. Indeed, she appears to have been adequately represented. As to Nutter, however, there is at the outset a conflict of interest. Viewing the facts at the time respondent agreed to represent both Walker and Nutter, we do not think it obvious, as DR 5–105(A) requires, that respondent could adequately represent both parties. In fact, as the Bar points out concerning Nutter's attitude, the fact that Nutter had failed after more than ten years to pay his debts indicated it was highly probable respondent would have to take further action against Nutter. As for respondent's suing Nutter, we question whether he might have taken this action earlier if he had not also represented Nutter. That he may have not so delayed is less important than the fact that the question is raised. Even if respondent was wrong in agreeing to represent both parties initially, by the time Nutter had defaulted on his debt it was obvious that respondent was faced with a conflict of interest that he could only cure by withdrawing from representation of both parties, which he eventually did. Even with full disclosure, not all conflicts may be waived by consent of the parties. Under the recently adopted ABA Model Rules, "[W]hen a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation

on the basis of the client's consent." Comment, Rule 1.7, American Bar Association Model Rules of Professional Conduct. We hold that respondent's actions gave not only an appearance of impropriety, but created a conflict of interest.

We agree with the Local Administrative Committee as to the sanctions to be imposed. Respondent entered into this agreement in apparent good faith. He has not had ethical difficulty previously, and it does not appear that he will have further difficulty. The respondent is therefore censured and assessed costs in the amount of $1,857.60.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.