

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MERGITU ARGO,<br><br>    Appellant,<br><br>  v.<br><br>PORT JOBS, a Washington corporation,<br><br>    Respondent. | DIVISION ONE<br><br>No. 71306-0-I<br><br>UNPUBLISHED OPINION<br><br>FILED: February 17, 2015 |

DWYER, J. – Mergitu Argo filed suit against Port Jobs, claiming that Port Jobs had violated Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW, in its dealings with her. The superior court dismissed her lawsuit on summary judgment. We affirm.

I

Port Jobs is a Washington corporation,[1] established to assist typically-underrepresented workers in gaining the skills necessary to obtain jobs in the Port of Seattle economy, including Seattle-Tacoma International Airport. To further its efforts, Port Jobs contracted with Neighborhood House, a nonprofit corporation.[2] According to Heather Worthley, Port Jobs' executive director, Port Jobs and Neighborhood House entered into a series of one-year, annual professional services agreements, commencing "in or about 2005." At issue

---

[1] The first amended complaint filed herein alleges this corporate status. Defendant's answer is not in our record, which discloses nothing further as to Port Jobs' legal status.

[2] The Professional Services Agreement includes a statement that Neighborhood House is a "non-profit corporation." The Agreement nowhere indicates Port Jobs' business organization model.

herein is a Professional Services Agreement (the Agreement), effective January 1, 2011 through December 31, 2011, in which Neighborhood House is referenced as the "Contractor." Section X of the Agreement provides:

> The relationship of Contractor to Port Jobs shall be that of an independent contractor; and the Contractor and its officers, employees, subcontractors and agents shall not be considered employees, agents, or legal representatives of Port Jobs for any purpose whatsoever. Port Jobs is not granted any express or implied right or authority to create or assume any obligation or responsibility on behalf of, or in the name of Contractor, or to bind Contractor in any manner or thing whatsoever.

Thus, according to the express terms of the agreement, Neighborhood House was an independent contractor of Port Jobs. Argo was not a party to that contract and was not mentioned therein.

Pursuant to the agreement, Port Jobs agreed to pay Neighborhood House for the scope of work set forth in "Attachment A." "Attachment A" provides, in pertinent part: "Employ, train and support 1 FTE employment case manager through contract and leveraged resources. This case manager will be housed at Airport Jobs." Thus, again according to the express terms of the Agreement, Argo—who ultimately filled the employment case manager position—was an employee of Neighborhood House. Pursuant to the Agreement, Neighborhood House out-stationed Argo part of the time at Airport Jobs. During the same time period, Argo was sometimes stationed at other Neighborhood House locations.

In January 2006, Neighborhood House sought applicants for the "Neighborhood House Employment Specialist" position. The position was in the employment and adult education department and reported to that department's manager. The position description included the number of hours per week and

hours of work as well as the hourly wage and other benefits. According to the description, the "position will be located at the Airport Jobs office in SeaTac Airport." Though the description is consistent with the scope of work Neighborhood House agreed to provide pursuant to the Agreement, the posting is by Neighborhood House, not Port Jobs, for a position with Neighborhood House, not Port Jobs.

On March 17, 2006, Argo submitted an application to Neighborhood House for the employment specialist position. Argo was the successful applicant. On March 29, 2006, Neighborhood House sent her a letter, which formally extended an offer of employment and confirmed the terms of that employment, including work hours, salary, and benefits. In particular, the letter stated that Argo's specific hours would be determined by her Neighborhood House supervisor. Neighborhood House also completed a "Neighborhood House — New Hire (Employee)" form documenting the hiring decision.

Argo began working part time for Neighborhood House on March 28, 2006 and began working full time, "as a regular employee of Neighborhood House," on April 10, 2006. On her first day, Argo completed Neighborhood House's "New Employee Information Data Sheet." Argo was also provided a copy of Neighborhood House's employment manual, which provided, in part:

> Your employment at Neighborhood House is "at will" which means either you or Neighborhood House may terminate the relationship at any time, without notice and for any reason. No agency representative other than the Executive Director has the authority to make an agreement contrary to the preceding at will statement and any such agreement must be in writing.

Neighborhood House compensated Argo for her employment. Argo admits that, from 2006 to 2012, she "received wages, salary or other compensatory employment payments and benefits from Neighborhood House." She also admits that, by contrast, she "did not receive any health, pension or other employment benefits from Port Jobs." Moreover, apart from "Starbucks gift cards," Argo does not identify "any wage or salary payments or other compensatory payments from Port Jobs." Argo further admits that "at no time did Port Jobs provide [her] with an IRS Form W-4 form to complete," and "at no time did Port Jobs withhold any amounts for income or employment taxes." Argo also admits that she "did not receive an IRS Form W-2 from Port Jobs."

Port Jobs funded the annual professional services agreements with Neighborhood House using grant money. Section IV of the Agreement provided, in pertinent part:

> Port Jobs may terminate this agreement without recourse by Contractor, in the event that Port Jobs or outside funding agencies discontinue funding. In the event of such termination, Contractor shall receive payment for those services provided up to the date of the notice of termination, if hand delivered, or three days after, if notice is mailed.

Eventually, and unfortunately for all involved, the grant money supporting the Agreement between Neighborhood House and Port Jobs was discontinued. Replacement funding was not secured. As a result, Port Jobs ended its long-standing contractual relationship with Neighborhood House. Argo stopped providing services on behalf of Neighborhood House at Port Jobs at the end of February 2012. However, Argo continued to work for Neighborhood House for another month.

At the end of March 2012, Neighborhood House terminated Argo's employment. Argo's Neighborhood House supervisor filled out a form entitled "Neighborhood House – Separation (Employee and Others)" identifying Argo as an "Employee" and indicating "Lay Off" as the "Separation Reason." Neighborhood House's "Personnel Action Log" further indicates that Argo was laid off from the organization effective March 30, 2012.[3]

II

On December 31, 2012, Argo filed her first amended complaint naming Port Jobs as defendant and asserting a single cause of action for alleged racial discrimination and wrongful termination under the WLAD. Argo did not allege third-party beneficiary status in the complaint.

On April 22, 2013, Port Jobs filed a motion for summary judgment, seeking dismissal of Argo's WLAD claim. The motion was premised upon the assertion that Port Jobs was not Argo's employer and, accordingly, there was no employment relationship supporting Argo's WLAD claim against Port Jobs. In her responsive briefing, Argo argued that she was an employee of Port Jobs and specifically denied independent contractor status. On July 12, 2013, the trial court granted, in part, Port Jobs' motion for summary judgment, ruling that, as a matter of law, Argo was not an employee of Port Jobs.[4]

Port Jobs subsequently filed a second motion for summary judgment, seeking dismissal of Argo's claim on the ground that Argo was not an independent contractor of Port Jobs and, thus, lacked standing to pursue a claim

_____

[3] Argo was re-employed by Neighborhood House as an "Employment Case Manager II" on February 22, 2013.

[4] Argo does not assign error to that order.

against Port Jobs pursuant to the WLAD. In her responsive pleadings, in contradiction to her prior position, Argo argued that she was, in fact, an independent contractor with regard to Port Jobs. On October 29, 2013, the trial court granted Port Jobs' dismissal motion, ruling that Argo was not an independent contractor.

On November 8, 2013, Argo filed a motion for reconsideration of this order. Therein, Argo admitted that she was an employee of Neighborhood House and not of Port Jobs. Instead, Argo argued—for the first time—that she was a third-party beneficiary of the contract entered into between Neighborhood House and Port Jobs. The trial court denied Argo's reconsideration motion on two separate bases: first, because the third-party beneficiary theory was not previously pled or presented to the court and Argo failed to offer any explanation for her failure to do so; and second, because Argo was not, in actuality, a third-party beneficiary of the contract.

III

Argo first contends that summary judgment as to whether Argo was an independent contractor was improperly granted. This is so, she asserts, because sufficient evidence was presented to create a material issue of fact. We disagree.[5]

---

[5] Argo's counsel appeared to concede this issue at oral argument. He stated:
The proper analysis for this particular claim . . . would be to look at the contract between Neighborhood House and Port Jobs and then ask the question . . . whether or not she is a "third party beneficiary" to that particular contract. . . . It is unprecedented in Washington to have this issue, and that is why procedurally we had kind of a mess coming up here as far as getting to the right issue, but that's the issue.

-6-

Summary judgment orders are reviewed de novo; we engage in the same inquiry as the trial court. Hiatt v. Walker Chevrolet Co., 120 Wn.2d 57, 65, 837 P.2d 618 (1992); Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The relevant questions are whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. Fahn v. Cowlitz County, 93 Wn.2d 368, 373, 610 P.2d 857, 621 P.2d 1293 (1980). In reaching these determinations, we consider the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. Schaaf v. Highfield, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). Summary judgment is improper if there is a dispute as to any material fact. Hiatt, 120 Wn.2d at 65. However, where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should be granted. CR 56(c); LaMon v. Butler, 112 Wn.2d 193, 199, 770 P.2d 1027 (1989).

In order for a plaintiff alleging discrimination in the workplace to overcome a motion for summary judgment, the worker must do more than express an opinion or make conclusory statements. Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988). The worker must establish specific and material facts to support each element of his or her prima facie case. Hiatt, 120 Wn.2d at 66-67.

An independent contractor is one who contracts with another to render services in the course of an independent occupation; such person represents the will of her employer only as to the result of the work, and not the manner and

Wash. Court of Appeals oral argument (Jan. 12, 2015) (on file with court). We nevertheless fully address the issue both because it was fully briefed and because it was not formally conceded.

means by which it is accomplished. Afoa v. Port of Seattle, 176 Wn.2d 460, 476, 296 P.3d 800 (2013); Cassidy v. Peters, 50 Wn.2d 115, 119, 309 P.2d 767 (1957). Similarly, an independent contractor is one who contracts to perform a certain service for another, according to her own manner or method, free from control and direction of her employer in all matters connected with the performance of the service, except as to the result of the work. Leech v. Sultan Ry. & Timber Co., 161 Wash. 426, 428, 297 P. 203 (1931). Thus, an independent contractor is one who is independent of her employer in doing the work and may work when and how she prefers. Leech, 161 Wash. at 432. There are two indispensable elements to the character of an independent contractor: the person must (1) contract to do a specified scope of work and (2) have the right to control the manner and method of doing it. Leech, 161 Wash. at 431. Factual disputes as to both elements are missing from Argo's claim.

First, there is no contract between Argo and Port Jobs. The only contract at issue here—the Agreement—is between Port Jobs and Neighborhood House. Argo is not a party to the Agreement. Moreover, the terms of the Agreement are clear that Neighborhood House, not Argo, is an independent contractor with regard to Port Jobs. Section X of the Agreement states in pertinent part: "The relationship of [Neighborhood House] to Port Jobs shall be that of an independent contractor." The Agreement does not specifically mention Argo but states generally: "[E]mployees [of Neighborhood House] shall not be considered employees, agents, or legal representatives of Port Jobs for any purpose whatsoever."

Argo attempts to distort the language quoted from the Agreement. She argues that she was an independent contractor for Port Jobs because her employer, Neighborhood House, was an independent contractor for Port Jobs and she stands in the shoes of her employer. Argo cites no authority in support of this argument. We are not persuaded. "[T]he court cannot rule out of the contract language which the parties thereto have put into it, nor can the court revise the contract under the theory of construing it, nor can the court create a contract for the parties which they did not make themselves, nor can the court impose obligations which never before existed." Farmers Ins. Co. of Wash. v. Miller, 87 Wn.2d 70, 73, 549 P.2d 9 (1976).

Second, Argo did not control the manner and method of her work. Argo's own testimony defeats her claim that she was an independent contractor for Port Jobs. For example, in her declaration, Argo stated: "[Port Jobs] supervisors had the final say over the type of work I was doing, the projects I performed, the manner in which I undertook to complete the projects, and all other aspects of my work as an employment specialist." In addition, in her merits briefing to this court, Argo makes the following assertions: Argo's "Port Jobs supervisor[s]" "had the final say in [her] schedule and her work, tasks and projects," Appellant's Br. at 4-5; and "[Port Jobs] controlled the manner and means of her work for six years." Appellant's Br. at 16-17 (internal quotation marks omitted).

Argo's claim that she was an independent contractor fails as a matter of law.[6]

IV

Argo next contends that the trial court erred in denying her motion for reconsideration, wherein she argued—for the first time—that she was a third-party beneficiary of the Agreement. Argo further argues that the WLAD protects third-party beneficiaries from discrimination. The trial court denied Argo's motion on two separate bases. We affirm the trial court's rulings on each ground.

A

The first basis for the trial court's denial of the reconsideration motion was that the motion was based on a legal theory that had not been raised in a timely manner.

We review the trial court's decision for an abuse of discretion. State v. Scott, 92 Wn.2d 209, 212, 595 P.2d 549 (1979). A trial court abuses its discretion when its decision is based on untenable grounds or reasons. Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005). No such abuse is shown to exist herein.

Under Civil Rule (CR) 59(a), an aggrieved party may move a trial court to reconsider its grant of summary judgment. The trial court may vacate its order if, due to a cause listed in the rule, the order materially affected a substantial right

---

[6] Both parties, directly or indirectly, analyze the WAC 162-16-230 factors for determining whether a WLAD claimant is an employee or an independent contractor. That is not necessary in this case, because both parties agree that Argo was not a Port Jobs employee. The question here is not which Argo was—an employee or independent contractor—but whether or not she was an independent contractor.

of the party. CR 59(a). CR 59(a) lists nine such causes. Argo based her motion on the final one—"(9) That substantial justice has not been done."

However, CR 59 does not permit a litigant to propose new theories of the case that could have been raised before entry of the adverse decision. Wilcox, 130 Wn. App. at 241. As this court has previously explained, this rule is in the interests of justice:

> Civil Rule 59 does not permit a plaintiff, finding a judgment unsatisfactory, to suddenly propose a new theory of the case. JDFJ's motion for reconsideration was in essence an inadequate and untimely attempt to amend its complaint in general, violating equitable rules of estoppel, election of remedies, and the invited error doctrine. We refuse to permit such a perversion of the rules.

Int'l Raceway, Inc. v. JDFJ Corp., 97 Wn. App. 1, 7, 970 P.2d 343 (1999) (footnote omitted).

As the trial court explained, Argo's "[third-party beneficiary] theory was never briefed or argued during either of the previous hearings and Plaintiff has offered no explanation for her failure to do so." It was, therefore, not an abuse of discretion for the trial court to deny Argo relief on that basis.

B

The trial court also denied the reconsideration motion on the ground that Argo was not a third-party beneficiary of the contract between Port Jobs and Neighborhood House. There was no error in this ruling.

"The creation of a third-party beneficiary contract requires that the parties *intend* that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract." Burke & Thomas, Inc. v. Int'l Org. of

Masters, Mates & Pilots, 92 Wn.2d 762, 767, 600 P.2d 1282 (1979) (emphasis added).

> The "intent" which is a prerequisite of the beneficiary's right to sue is "not a desire or purpose to confer a particular benefit upon him," nor a desire to advance his interests, but an intent that the promisor shall assume a direct obligation to him. So long as the contract necessarily and directly benefits the third person, it is immaterial that this protection was afforded him, not as an end in itself, but for the sole purpose of securing to the promisee some consequent benefit or immunity. . . . The [motive, purpose, or desire of the parties] is immaterial; the intention, as disclosed by the terms of the contract, governs.

81 A.L.R. 1271 (citation omitted) (quoting Byram Lumber & Supply Co. v. Page, 109 Conn. 256, 146 A. 293 (1929)); accord Vikingstad v. Baggott, 46 Wn.2d 494, 282 P.2d 824 (1955). "The intention of the parties in this respect is determined by the terms of the contract as a whole, construed in the light of the circumstances under which it was made." 81 A.L.R. 1271; accord Postlewait Constr., Inc. v. Great Am. Ins. Companies, 106 Wn.2d 96, 720 P.2d 805 (1986).

Moreover, in order for a specific person to be a third-party beneficiary and obtain resulting rights, the third party must be an intended beneficiary rather than merely an incidental beneficiary. See Postlewait, 106 Wn.2d at 99 (trial court properly dismissed construction company's claim since it was not intended third-party beneficiary of insurance policy). "An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee." RESTATEMENT (SECOND) OF CONTRACTS § 315 (1981). A third-party is an intended beneficiary and can sue upon a contract if the contract is for his direct benefit. Wolfe v. Morgan, 11 Wn. App. 738, 743, 524 P.2d 927 (1974). By contrast, a person is considered an incidental beneficiary, and therefore cannot sue upon a

contract, where the benefit obtained pursuant to the contract is merely incidental, indirect, or inconsequential. Wolfe, 11 Wn. App. at 743. "It is not essential to the creation of a right in an intended beneficiary that he or she be identified when a contract containing the promise is made." 25 DAVID K. DEWOLF, ET AL, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 12.2, at 370 (2014); accord Boise Cascade Corp. v. Pence, 64 Wn.2d 798, 803, 394 P.2d 359 (1964).

The current Restatement provides the following useful illustration of an incidental beneficiary: "B contracts with A to buy a new car manufactured by C. C is an incidental beneficiary, even though the promise can only be performed if money is paid to C." RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981), cmt. e. The illustration allows a helpful comparison to this case.

In this case, Argo brings an action against Port Jobs. Thus, the critical question here is whether the terms of the Agreement as a whole, construed in light of the circumstances under which it was made, indicate that Port Jobs and Neighborhood House intended that *Port Jobs* would assume a direct obligation to Argo at the time they entered into the contract. There is no such indication.

Pursuant to the Agreement, Port Jobs promised, in pertinent part, to pay Neighborhood House "an amount not to exceed $65,000" for the scope of work set forth therein. Port Jobs' only obligation was to Neighborhood House. It assumed no obligation—direct or otherwise—to Argo.

This conclusion is consistent with the terms of the Agreement as a whole, which indicate that Port Jobs and Neighborhood House intended that there would be no legal relationship between Port Jobs and employees of Neighborhood

House, of which Argo became one. To the extent that the Agreement contemplates the possibility of a legal relationship between Port Jobs and employees of Neighborhood House, it is to explicitly disclaim the existence of such a relationship. Section X of the Agreement provides: "[Neighborhood House] and its officers, employees, subcontractors and agents shall not be considered employees, agents, or legal representatives of Port Jobs for any purpose whatsoever." As the trial court astutely noted in its order denying Argo's motion for reconsideration, "Section X of the contract is clear evidence of the parties' intent that Neighborhood House employees not have any contractual relationship with Port Jobs."

The proposition that Argo was a third-party beneficiary of the contract is further undermined by the fact that, over several years of recurring contracts, Port Jobs did not, in fact, convey any benefits directly to Argo. From 2006 to 2012, Argo received wages and other compensatory employment payments and benefits from Neighborhood House. By contrast, she "did not receive any health, pension or other employment benefits from Port Jobs." Moreover, Argo does not identify any wage or salary payments or any other significant compensatory payments[7] conveyed to her by Port Jobs.

Indeed, this case is comparable to the Restatement illustration set forth above. As B agreed to pay A in the illustration, Port Jobs agreed to pay Neighborhood House. Moreover, as in the illustration, the money paid would cause a third entity to receive monetary benefit. However, unlike in the

---

[7] While undoubtedly much appreciated, we do not consider the bestowing of Starbucks gift cards a significant compensatory benefit.

illustration, the payment from Port Jobs to Neighborhood House need not have benefitted Argo at all, because she—unlike the car manufacturer—was not specifically identified in any way. As with the car manufacturer in the illustration, Argo is an incidental beneficiary of the contract between Port Jobs and Neighborhood House.

Argo, again like the car manufacturer in the illustration, may have benefitted from the recurring, annual contracts between Port Jobs and Neighborhood House. Indeed, it seems likely that she did, given that she was terminated by Neighborhood House soon after the contractual relationship between Neighborhood House and Port Jobs ended. However, any benefit she derived was merely incidental. Neighborhood House was free to continue employing Argo after the Agreement was terminated. It simply chose not to do so. Argo has not established third-party beneficiary status.[8]

Affirmed.

We concur:

---

[8] Given our determination that Argo did not establish that she was a third-party beneficiary of the Agreement between Port Jobs and Neighborhood House, we need not reach the question of whether the provisions of the WLAD apply to third-party beneficiaries.